530

Per Curiam.—This cause having heretofore been submitted to the Court upon the transcript of the record of the judgment herein, and briefs and argument of counsel for the respective parties, and the record having been seen and inspected, and the Court being now advised of its judgment to be given in the premises, it seems to the Court that there is no error in the said judgment; it is, therefore, considered, ordered and adjudged by the Court that the said judgment of the Circuit Court be, and the same is hereby affirmed.

Whitfield, P. J., and Terrell and Buford, J. J., concur.

John W. Martin, as Governor of the State of Florida; Ernest Amos, as Comptroller of the State of Florida; J. C. Luning, as Treasurer of the State of Florida; Fred H. Davis, as Attorney General of the State of Florida, and Nathan Mayo, as Commissioner of Agriculture of the State of Florida; and John W. Martin, Ernest Amos, J. C. Luning, Fred H. Davis and Nathan Mayo, as Board of Commissioners of Everglades Drainage District, a Corporation Created and Existing Under the Laws of the State of Florida; and John W. Martin, Ernest Amos, J. C. Luning, Fred H. Davis and Nathan Mayo, as Trustees of the Internal Improvement Fund of the State of Florida, *Appellants*, v. Dade Muck Land Company, a Florida Corporation, *Appellee*. (No. 644.)

John W. Martin, as Governor; Ernest Amos, as Comptroller; John C. Luning, as Treasurer; Fred H. Davis, as Attorney General, and Nathan Mayo, as Commissioner of Agriculture, of the State of Florida, as

AND CONSTITUTING THE BOARD OF COMMISSIONERS OF EVERGLADES DRAINAGE DISTRICT, *Appellants,* v. M. B. GARRIS PROPERTIES, INC., A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF FLORIDA, AND W. L. SHOEMAKER, *Appellees.* (No. 638.)

En Banc.

Opinion Filed March 26, 1928.

Petition for Rehearing Denied April 12, 1928.

532

536

*Fred H. Davis,* Attorney General; *Marvin C. McIntosh, Robt. R. Reed* and *David M. Wood,* for Appellants.

*S. B. Jennings,* for Appellee in No. 644.

*Fred H. Davis,* Attorney General; *Marvin C. McIntosh, Robt. R. Reed* and *David M. Wood,* for Appellants.

*Evans & Mershon, Charles R. Pierce* and *O. B. Simmons, Jr.,* for Appellees in No. 638.

540

544

546

550

552

554

558

560

562

WHITFIELD, J. (after stating the facts):

The appeal in each case is from an order overruling a demurrer to a bill of complaint brought by a tax payer to enjoin the issue of bonds by the Board of Commissioners of the Everglades Drainage District and also to enjoin the levy of taxes to pay the bonds as authorized by Chapter 12016, Acts of 1927, the contention being that Chapter 12016 violates stated provisions of both the State and the Federal Constitutions.

The Everglades Drainage District was formed by Chap-

ter 6456, Acts of 1913, which chapter supplemented Chapter 5709, Acts of 1907. Bonds were issued and an acreage tax has been levied and collected on the lands to be drained. See Chap. 12017, Acts 1927, amending previous statutes. Under Chapter 8412, Acts of 1921, a one mill maintenance tax was levied on all property in the district. From these sources the funds used in the drainage operations have been received. The validity of the district and of the acreage tax have been adjudicated. Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47; Bannerman v. Catts, 80 Fla. 170, 85 South. Rep. 336; Berry v. Hardee, 83 Fla. 531, 91 South. Rep. 685. The maintenance tax levied by Chapter 8412, Acts of 1921, was held valid in Richardson v. Hardee, 85 Fla. 510, 96 South. Rep. 290. The contest here is as to the levy of an *ad valorem* assesssment under Chapter 12016, Acts of 1927, for additional drainage funds. The assessment made under Chapter 12016 for 1927 in 1/5 of a mill on the dollar *ad valorem* tax on all the real property in the district, the collections to be used for paying interest and principal of bonds to be issued to raise funds for purposes of drainage; and such tax may be regarded as being in the nature of a special assessment for benefits.

Chapter 12016, Acts of 1927, copied in full in the statement, authorizes the Board of Commissioners of the Everglades Drainage District "to issue negotiable bonds of the District in amount of Twenty Million ($20,000,000.00) Dollars in addition to bonds now outstanding, in order to complete the work for which said district was created."

Section 2 of the Act appropriates "for the payment of such bonds, proceeds of the acreage taxes heretofore or hereafter levied in such district, over and above the amounts which the Board may use for payment or redemption of bonds now outstanding and payable exclusively out of such acreage taxes. As further security for the sole pur-

pose of paying or redeeming bonds authorized by this Act, there is hereby authorized, levied and assessed, beginning with the year 1927, an annual *ad valorem* tax, or a tax from time to time, on the real property in such district, additional to such acreage or drainage tax, in such amount or amounts as shall be necessary for the payment of such bonds.''

''Section 7. It is hereby determined that the benefits to the territory included in the Everglades Drainage District from the completion of the work for which the District was created, will exceed the cost of such completion to be financed by the issuance of such bonds, and that the tax authorized by this Act, additional to the acreage or drainage tax heretofore levied, is in proportion to the benefits from such works to the several parcels of real estate within the District, including the lands held by the Trustees of the Internal Improvement Fund. The assessment of such tax shall not be impaired nor the levies thereof restricted, so long as any of the bonds now authorized by this Act remain unpaid.''

Chapter 12016, Acts of 1927, is asserted to be invalid on numerous grounds, which need not be discussed in detail. The provision of Section 2 of the Act that the lands within the drainage district held by the Trustees of the Internal Improvement Fund shall be subject to the taxes imposed by the Act and that the Trustees shall pay such taxes out of funds in hand ''or to be appropriated by the State for such purposes,'' can, as to the provision quoted, lawfully have reference only to funds derived from the swamp and overflowed lands that were by Chapter 610, Acts of 1855 (Sections 1054-1055, *et seq.* Rev. Gen. Stats. 1920), vested in the Trustees of the Internal Improvement Fund, and it is here held that such is the proper interpretation of that provision of the Act.

There may be lands belonging to the Internal Improve-

ment Fund that are not in the Everglades Drainage District, and there may also be assets of the Internal Improvement Fund that are not "funds in hand" of the Trustees of the Internal Improvement Fund. If so, the words "or to be appropriated by the State for such purposes" contained in Sections 2 and 4 of Chapter 12016, must be construed to have reference to such lands and assets of the Internal Improvement Fund that may "be appropriated by the State for" the purpose of paying the special assessment *ad valorem* tax authorized by the statute to be levied on the Internal Improvement lands in the district or that may "be appropriated by the State for" the purpose of buying in lands in the district that are sold for the non-payment of the *ad valorem* drainage tax under the statute. Otherwise, the word "or to be appropriated by the State for such purposes" that are contained in Sections 2 and 4 of Chapter 12016, would be inoperative and should be regarded as eliminated from the statute. The words "or to be appropriated by the State for such purposes" as they appear in Sections 2 and 4 of Chapter 12016, cannot place upon the State any obligation whatsoever, legal or otherwise, to appropriate any money, funds or assets of any nature from the State treasury, except those arising from the use or sale of the swamp and overflowed lands that were vested in the Trustees of the Internal Improvement Fund as Trustees for drainage and other trust purposes by Chapter 610, Acts of 1855, when the Constitution of 1838 was in force and prior to the adoption of the Constitutions of 1868 and 1885. The words "to be appropriated by the *State*" are construed to mean, "to be appropriated by the *Legislature* of the State," and to refer to appropriations from the assets of the Internal Improvement Fund as pointed out in this opinion, which would in no wise violate the provisions of the Constitution. Any other interpretation would

render the quoted provision repugnant to Section 6, Article IX of the State Constitution of 1885, relative to the issue of State bonds. The bonds authorized to be issued by Chapter 12016, Acts of 1927, are obligations of the Everglades Drainage District and not of the State of Florida. The State is in no way whatever bound to pay the principal or the interest on the bonds and the State cannot directly or indirectly pay such bonds by State taxation without violation of Section 6, Article IX of the State Constitution. Likewise the provision of Section 4 of the Act that the Trustees of the Internal Improvement Fund shall, in the absence of other satisfactory bidders, buy in any lands sold for the non-payment of the tax, using any funds in hand, "or to be appropriated by the State for such purposes," can, as to the part thereof last quoted, lawfully have reference only to the swamp and overflowed lands or their proceeds held by the Trustees of the Internal Improvement Fund. The payment of taxes with State funds, other than assets of the Internal Improvement Fund, for the purchase of lands sold for non-payment of drainage taxes, would in effect be the payment by the State of the principal and interest of the bonds to be issued by the Everglades Drainage District. In view of the limitations contained in Section 6, Article IX, of the State Constitution, as interpreted by the Supreme Court of Florida, the State cannot legally in any form or manner, either directly or indirectly or contingently pay or be obligated to pay the whole or any part of the principal or the interest of the bonds authorized to be issued by the Everglades Drainage District. The bond obligation is that of the district alone, though the drainage operations are by virtue of the statute conducted by State officials who under Chapter 610, Acts of 1855, are *ex officio* Trustees of the Internal Improvement Fund and who, under Chapter 6456, Acts of 1913,

constitute the Board of Commissioners of the Everglades Drainage District. The swamp and overflowed lands granted to the State by Act of Congress of September 28, 1850, to be used as far as necessary for drainage purposes, were by the Legislative Act of 1855, Chapter 610, placed in a "distinct and separate fund," in trust for drainage and other purposes; and this was the status of such fund when the Constitutions of 1868 and 1885 were adopted.

The provision of Section 4, Chapter 12016, that "such taxes from date of assessment shall have the force and effect of a judgment and execution at law against the owner of such property," is inoperative to bind the State or to deprive persons of property without due process of law; and the provision may be regarded as eliminated.

The statute cannot and does not pledge or loan the credit of the State to the Everglades Drainage District and therefore, does not violate Section 10, Article IX of the State Constitution. Section 10 of the Act relating to the use of the bonds as security for depositors of public funds and for investment of trust funds, etc., may be regarded as eliminated since it is not germane to or properly connected with the subject expressed in the title of the Act. See Carr v. Thomas, 18 Fla. 736.

If Sections 8, 9, and 11 or any part thereof be adjudged to be invalid, such invalid section or sections or part or parts thereof may be inoperative without affecting the remainder as an effective law. The same may be said of any other provision that is not essential to the main purpose of the enactment. Other provisions of the Act that are specifically asserted to be invalid, appear to be properly connected with the one general subject that is briefly expressed in the title of the Act; and it is not made to appear that any challenged portion of the Act not herein specifically discussed and adjudicated, is violative of any identified

provision of organic law. The title of the Act is sufficient to express a single subject and is not in any way misleading as to its valid provisions.

· The Everglades Drainage District is a statutory subdivision of the State for special governmental purposes. It embraces a large portion of each of several counties, and the administration of its governmental affairs is wholly distinct from the government of the several counties. The provisions of Chapter 12016 that are sustained, are not repugnant to provisions of the Constitution relating to the duties of county officers.

It is competent for the legislature, as an incident to the formation of a taxing district for governmental purposes to impose administrative duties upon State or other officers to effectuate the objects of the district, there being no express or implied organic provisions to the contrary. See State *ex rel.* v. Fearnside, 87 Fla. 349, 100 So. 256.

As the drainage operations are designed to benefit the lands in the district the legislature had the power to levy the *special assessment ad valorem* tax upon the real property in the district without including personal property, and Section 1, Article IX of the Constitution, relating to general taxation, is not violated.

The *ad valorem* tax authorized by Chapter 12016 is not double taxation; nor is it an unlawful delegation of the taxing power. It is a provision to pay for bonds issued to raise additional funds within definite limitations to effectuate a governmental improvement, the benefits to the property assessed being determined by a statute that has a basis in existing facts and reasonable expectations and not predicated upon mere vague conjecture or prophesy.

The essential portions of the statute authorizing bonds to be issued, and providing for an *ad valorem* tax if neces-

sary to pay the bonds, not being invalid, the complainant, to get any relief, must clearly show that its property is unlawfully included in the district or is otherwise illegally assessed under the statute. The validity of the drainage district is not in question.

All forms of special assessments for local public improvements or facilities must have fair relation to benefits that reasonably may be expected to accrue to the value or to the uses of the property so specially assessed; and such special assessments must not, by reason of arbitrary action or unjust discrimination or otherwise, violate the due process or equal protection or other provisions of organic law. Where the public improvements contemplated and the method of the special assessments and the anticipated benefits are determined by direct legislative enactment, such determinations will not be disturbed by the courts unless an abuse of power or purely arbitrary and oppressive action is clearly shown in appropriate proceedings duly taken by parties who have not acquiesced in the action taken and have not abandoned or waived their rights and who are otherwise entitled to complain. Administrative determinations under legislative authority as to improvements to be made and as to the method, rate or amount of special assessments to be imposed, or as to contemplated benefits to, and the apportionment of burdens on, the property so specially assessed, are not conclusive; but such administrative determination, when regularly made, will be given due weight and consideration by the courts in determining by appropriate procedure duly taken, whether the authority conferred has been properly exercised and whether private rights have been unlawfully invaded.

All lands in a duly and fairly formed drainage district may be specially assessed for drainage purposes if they reasonably may be benefited directly or indirectly by drain-

age operations; and no land in the district is exempt from a just special assessment merely because it may not receive a *direct* or an exactly equal benefit from the drainage, where no arbitrary rule resulting oppressively has been applied.

While special assesssment *ad valorem* taxes levied upon lands in special taxing districts formed by the Legislature for public improvements as well as special assessments made by municipalities under statutory authority upon abutting property for street improvements, should in any case have just relation to benefits that may reasonably be expected to accrue to the property that is assessed, there are material differences in the scope and purposes of the two classes of assessments that may require the application of somewhat different principles of law within controlling limitations. In a street or other similar public improvement or facility where abutting or contiguous property only is specially assessed to pay for the public improvement or facility, the special assessments should not exceed the benefits resulting directly, specially and peculiarly to the property specially assessed, and the special assessments should be fairly apportioned as between those who should pay for the public improvement, and the improvement contemplated should be reasonable in view of all pertinent conditions affecting its use.

Where a special taxing district is formed for local improvements, the special assessments may extend throughout the district and are usually much less burdensome and the benefits are more general and indirect. The taxing district system of special assessments contemplates a wider and more general distribution of the assessment burden, having relation to ultimate general public benefits and advantages to the district as a whole. In this, as in all other cases, the improvement contemplated should be reasonable and appro-

priate for a lawful public purpose and the special assessment as made should be reasonable in amount and fairly apportioned according to benefits. Good faith and substantial justice and not exact equality of benefits and burdens are required.

Lands in a drainage district abutting the area to be drained, might to some extent be more directly benefited by the drainage than are other lands not so contiguous; but all lands within an area that reasonably may be directly or indirectly benefited by the drainage, as well as the area to be drained, may be formed into a taxing district and may justly be required to bear their fair proportions of a reasonable special tax burden to pay for an improvement designed for a common benefit in the district. The amount of the special assesssment should not substantially exceed the benefits that reasonably may be expected to accrue to the property specially assessed; and the assessment as made should not be arbitrary or unjustly discriminating in view of all pertinent conditions; and the benefits to the property assessed should have a reasonable basis in existing facts or reasonable expectations and should not rest upon mere vague conjecture or prophecy. In the absence of arbitrary action or other abuse of power, it is within the law-making discretion to determine the limits of the taxing district, and the method of assessing and apportioning the burden that is imposed for the common benefit of the district considered as an entirety. A reasonable *ad valorem* tax upon just valuations may be imposed by legislative authority upon lands in a taxing district for drainage purposes, where the project is of such a nature that a common public benefit that is more or less peculiar to the district reasonably may be anticipated from drainage operations. It is not essential that all the lands in a drainage district shall receive a direct benefit from the drainage commensurate with the tax

burden, nor is it material that lands not in the taxing district may also be benefited, where there is no arbitrary inclusion or exclusion of lands in forming the district, and no arbitrary imposition or apportionment of the tax burden, and no illegal or arbitrary or unreasonable action in the exercise of the power or authority in levying the tax or in the plan or prosecution of the drainage operations. The benefits in a taxing district may be general, indirect and prospective.

Where a local public improvement or facility is directly or indirectly, but peculiarly though incidentally or generally, beneficial to a local community or to a particular portion of the State or of a county, it is within the power of the Legislature by valid enactment to formulate a special taxing district including therein property that reasonably may be benefited generally or incidentally by the contemplated local improvement or facility, and to levy a reasonable tax upon all the real estate included in the district to pay for the local improvement or facility; and such legislative enactment will not be declared to be invalid by the courts unless the action is clearly arbitrary and oppressive and plainly violates organic rights. In the absence of a flagrant abuse of legislative power or of purely arbitrary legislative action, which invades organic property rights, the State may by statute establish drainage district and tax lands therein for local improvements; and none of such lands may escape appropriate taxation for the local improvement, solely because they will not receive *direct* or exactly *equal* benefits, where no arbitrary and oppressive action is clearly and fully shown. See Miller & Lux v. Sacramento & San Joaquin Drainage Dist., 256 U. S. 129, 41 Sup. Ct. Rep. 404; Valley Farms Co. of Yonkers v. Westchester County, 261 U. S. 155, 43 Sup. Ct. Rep. 261; Houck v. Little River Drainage Dist., 239 U. S. 254, 36 Sup. Ct.

Rep. 58; Embree v. Kansas City & Liberty Boulevard Road Dist., 240 U. S. 242, 36 Sup. Ct. Rep. 317; Cole v. Norborne Land Drainage Dist., 270 U. S. 45, 46 Sup. Ct. Rep. 196; Branson v. Bush, 251 U. S. 182, 40 Sup. Ct. Rep. 113; Missouri Pac. R. Co. v. Western Crawford Road Imp. Dist., 266 U. S. 187, 45 Sup. Ct. Rep. 31; Kansas City Southern R. Co. v. Road Imp. Dist. No. 3 of Sevier County, Arkansas, 266 U. S. 379, 45 Sup. Ct. Rep. 136; Richardson v. Hardee, 85 Fla. 510, 96 South. Rep. 290; Los Angeles County Flood Control Dist. v. Hamilton, 177 Cal. 119, 169 Pac. Rep. 1028; Milheim v. Moffat Tunnel Improvement Dist., 262 U. S. 710, 43 Sup. Ct. Rep. 694; Withnell v. Ruecking Const. Co., 249 U. S. 63, 39 Sup. Ct. Rep. 200; Hunter v. Owens, 80 Fla. 812, 86 South. Rep. 839.

In Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. Rep. 187; Myles Salt Co. v. Board of Com's of Iberia & St. Mary Drainage Dist., 239 U. S. 478, 36 Sup. Ct. Rep. 204; Kimama Highway Dist. v. Oregon Short Line R. Co., 298 Fed. Rep. 431, the action taken was shown to be ''palpably arbitrary and a plain abuse'' of power, thereby in effect taking property without due process of law; and in Kansas City Southern R. Co. v. Road Imp. Dist. No. 6 of Little River County, 256 U. S. 658, 41 Sup. Ct. Rep. 604; Thomas v. Kansas City Southern R. Co., 261 U. S. 481, 43 Sup. Ct. Rep. 440; Road Imp. Dist. No. 1 of Franklin County, Arkansas v. Missouri Pac. R. Co., 274 U. S. 188, 47 Sup. Ct. Rep. 563; Gast Realty & Improvement Co. v. Schneider Granite Co., 240 U. S. 55, 36 Sup. Ct. Rep. 254, unjust and arbitrary discrimination was shown in imposing the assessment burdens thereby denying the equal protection of the laws. See also Paul Bros. v. Long Branch and Lakeside Special Road and Bridge Dist., 83 Fla. 706, 92 South. Rep. 687; Consolidated Land Co. v. Tyler, 88 Fla. 14, 101 South. Rep. 280; Willis v. Special Road & Bridge Dist. No. 2, Os-

ceola County, 73 Fla. 446, 74 South. Rep. 495; Atlantic Coast Line R. Co. v. City of Gainesville, 83 Fla. 275, 91 South. Rep. 118; Kansas City Southern Ry. Co. v. May, 2 Fed. Rep. (2d.) 680; Atlantic Coast Line R. Co. v. City of Lakeland, Florida, decided June Term, 1927.

The lands included in the Everglades Drainage District (Chap. 5709, Acts 1907; Chap. 6456, Acts 1913,) are among the swamp and overflowed lands granted to the State by Act of Congress approved September 28, 1850, the granting Act, providing that ''the proceeds of said lands, whether from sale or by direct appropriation in kind, shall be applied, exclusively, as far as necessary, to the purpose of reclaiming said lands by means of levees and drains.'' See Chapter 332, Acts of 1851, and Chapter 496, Acts of 1853, for the first enactments by the State with reference to the lands granted to the State by the Act of Congress of September 28, 1850.

The obligation of the State to drain the granted lands was recognized in the enactment of Chapter 610, approved January 6, 1855, which placed the lands in a separate fund to be called the Internal Improvement Fund of the State of Florida, and vested the lands in the Governor of the State and four other named State officials and their successors in office as Trustees of the Internal Improvement Fund of Florida, in trust for the purposes defined by the statute. Section 16 of the Act provides ''that the Trustees of the Internal Improvement Fund shall * * * make such arrangements for the drainage of the swamp or overflowed lands, as in their judgment may be most advantageous to the Internal Improvement Fund, and the settlement and cultivation of the lands.'' Sec. 1070, Rev. Gen. Stats. 1920. In furtherance of the duty and purpose to comply with the granting Act of Congress requiring the lands to be drained, the State officers and their successors in office who are by

Chapter 610, Trustees of the Internal Improvement Fund with statutory powers and duties with reference to draining the swamp and overflowed lands, are by Chapter 6456, Acts of 1913, (succeeding Chapter 5377, Acts of 1905 and Chapter 5709, Acts of 1907,) made the "Board of Commissioners of Everglades Drainage District," with authority to establish and construct a system of canals, levees, dikes, draws, locks and reservoirs to reclaim the lands within the district. See other statutes listed in the statement.

The Everglades drainage improvements are governmental and extensive, having reference to surface drainage, flood control, health, sanitary, transportation, land development and common betterment, and may extend to surface irrigation and perhaps other public improvements and enterprises designed to enhance the general welfare.

The annual rainfall in that latitude is relatively very great, and the larger part of the yearly rainfall is usually in short periods, causing floods. Flood control as well as public safety and health are among the public improvements designed by the drainage operations in the Everglades Drainage District; and such improvements are necessarily beneficial to the district as a whole, affording direct or indirect benefits to all the lands in the district, by increasing the value and uses of the lands. Improved flood control, and safety, health and sanitary conditions increase the uses and value of lands upon elevations or ridges as well as other lands in the district. The need of flood control and its benefits to public safety and health and to the lands in the entire district are obvious upon a consideration of the history and conditions of the Everglades section and the adjacent territory. This has been recognized by the Federal grant of swamp and overflowed lands to the State in providing that such lands or their proceeds should be used for constructing levees and drains, which are appropriate

to flood control as well as to surface drainage and other improvements.

Likewise, the State statutes contemplate the construction of "canals, drains, dikes, dams, locks and reservoirs" &c., in the drainage district. Sec. 1155, Rev. Gen. Stats. 1920. Chapter 12016 authorizes bonds and the *ad valorem* assessment to secure additional funds "in order to complete the work for which the drainage district was formed."

The history and the well known actual conditions of a public nature affecting the controversy, of which the Court takes judicial notice, contradict the allegations that the drainage operations in the district cannot benefit complainant's lands, and the demurrer does not in legal contemplation admit such allegations to be true in point of fact.

The controversy here does not relate to an assessment against abutting property to pay for a street improvement that should be a special, peculiar and direct benefit to the abutting property at least equal to the assessment. But the contest is as to an *ad valorem* assessment upon all the lands in a taxing district formed by statute to provide for a public improvement that is a general and common benefit to the district as an entirety. For a general, common, public benefit to a taxing unit as a whole, lands in the taxing unit may be reasonably assessed by legislative authority even though the lands as such are not immediately or directly benefited by the public improvement, when the assessment is not an abuse of authority.

Every case of special assessments involving questions as to benefits to the property assessed should be determined by the application of appropriate rules of law to the facts then adduced.

The legislative, executive and judicial records and proceedings in this State indicate that the drainage of the Everglades and adjacent territory is a necessary and pri-

mary step in the reclamation, improvement and development of that section that will greatly enhance the value and uses of lands in that portion of the State; and further that the drainage already accomplished has greatly increased the value and utility of the lands far beyond as well as within the area that needed draining. The benefits are general and indirect to the locality at large as well as special and immediate to lands that needed drainage or to adjacent or contiguous lands. It is within the province of the law making department—the Legislature—to determine what area shall be specially assessed for drainage purposes; and a statutory determination will not be disturbed by the courts in the absence of a clear and full showing of arbitrary action or a plain abuse. Houck v. Little River Drainage Dist., 239 U. S. 254, 36 Sup. Ct. Rep. 58; Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47. And even though the taxing district could reasonably have included other lands because they are also benefited, the omission of such lands from the district will not render the district or the tax levied therein illegal, in the absence of a clear showing of abuse of legislative power or arbitrary action that inevitably takes property without due process, or of unjust discrimination that denies the equal protection of the laws to property owners in the district. Where indirect benefits of a general nature may reasonably be expected to accrue to the taxing district as an entirety, particular pieces of property may not be relieved of a fair assessment merely because such property does not need drainage or is not benefited equally with other property in the distict, since exact equality is not attainable as to the levy or as to the apportionment of assessments for benefits. In special assessments, reasonable determinations and substantial justice are the requisites; and a wider latitude of action is accorded to a legislature than to an ad-

ministrative body. The courts do not interfere with legislative or administrative determinations of levies and apportionments of special assessments for benefits, whether the benefits be special and direct or general and indirect, unless a clear abuse of legislative power or administrative authority is duly shown, and substantial organic or fundamental property rights which have not been abandoned or waived or released are thereby violated.

The drainage of the Everglades is not a local undertaking initiated by interested parties merely to relieve the overflowed lands of surface water for the sole benefit of the lands to be drained; but the drainage being done in the Everglades Drainage District is by a State agency, under statutory authority. The drainage removes surface water, reduces the level of subsurface percolating water and makes the lands all over the district more useful for high development. The public improvement is designed for the immediate and potential permanent general benefit to the entire statutory district containing millions of acres, by making the lands both public and private that are affected by surplus water, fit for improvement and development by growing thereon fruit, vegetable and staple crops, live stock and other products, by the erection of commercial, residential and other structures, by establishing business enterprises, transportation facilities, better flood control, sanitary, health and general welfare conditions, and by making the lands in the district that are not overflowed, more accessible from and over lands to be drained, and more valuable for all useful purposes. Such development and improvement will certainly be an indirect, if not also a direct, benefit to all the lands in the district, in that the enhanced utilization of the vast area of drained lands will inevitably result in an increase of population, commercial activities, pleasure and health resorts and varied products

of the entire district, with a great increase in the values of the lands and in the business conducted in the district, which increases in values and uses, with better health, transportation and general welfare conditions, will extend to residential as well as to business, producing and other properties in the district, whether some of them actually need draining or not. Los Angeles Co. v. Hamilton, 177 Cal. 119, 169 Pac. 1028. The bill of complaint alleges that some of the canals of the drainage operations in the district are being utilized to dispose of the surplus surface water upon complainant's and other lands in Coral Gables and Hialeah. Besides this, it appears that sloughs exist in more or less proximity to complainant's lands, which sloughs will be drained or contracted or otherwise improved and developed, and will reasonably benefit complainant's and other property though it be not a part of or contiguous to such sloughs. These and other considerations, together with the general and special benefits already accrued and accruing to the district as a whole from the drainage operations, were known to the members of the Legislature; and their law making determination as to actual and potential benefits to accrue to the district as a whole, manifestly has very substantial basis in existing facts as well as in reasonable expectation. There is no sufficient showing that any lands have been arbitrarily and by an abuse of legislative authority included in the district, or that any such lands may not reasonably be directly or indirectly benefited by the drainage operations and by the improvement, development and added use of the lands to be drained. Such development and general benefits are already demonstrated by the improvements in the district since its creation in 1907 and 1913. The territory covered by Coral Gables was in the drainage district when the city was built and the City of Miami has grown into the district. So with other cities

and towns now wholly or partly in the drainage district. See statement filed herewith. Indirect benefits are conceded by the appellee. This is sufficient to sustain the *ad valorem* tax.

While the Everglades Drainage District is a State agency, it is utilized not for *general* governmental purposes, but for the public improvement of a large area comprising more than four million acres of public and private lands in the southern part of the State, for the benefit of the district as an entirety; and the acreage and *ad valorem* taxes imposed by statute are not general taxes for governmental purposes but are special assessments for benefits to accrue from the public improvement. Such district having been formed by a statute and the scheme of drainage and the methods of assessments, and the benefits to accrue to the whole district from the drainage, having been determined by statute, such determinations will not be disturbed by the courts at the suit of an owner of property so specially assessed, in the absence of a clear showing duly made of an abuse of legislative power resulting in an unlawful invasion of complainants' rights. Allegations that complainants' real property in the district is upon an elevated ridge several feet above the surrounding lands and does not need drainage; and that the property will not and cannot receive any benefit whatsoever from any system of drainage, are not good as against the demurrer because the Legislature has by statute determined the benefits, which may be indirect and general, and such benefits are not alone to lands that need surface drainage. A *legislative determination* as to benefits is not subject to mere general allegations of no benefits, at least when there are no specific allegations showing that there could have been no conceivable reasonable basis for the law making determination that benefits direct or indirect will accrue to all of the lands that are

specially assessed, whether all the lands need drainage or not, and even if some lands are more elevated than others. This Court has held ''The fact that such improvement may not be of direct benefit to every parcel of land within the district constitutes no just reason why it should not bear its portion of the expense incurred in the work of drainage and reclamation of the District as a whole; and the further fact that some of the lands are not overflowed, is not conclusive that they receive no benefit.'' Lainhart v. Catts, 73 Fla. 735, 75 Sou. Rep. 47.

''If it be essential or material for the prosperity of the community, and if the improvement be one in which all the land owners have to a certain extent a common interest, and the improvement cannot be accomplished without the concurrence of all or nearly all of such owners, by reason of the peculiar natural condition of the tract sought to be reclaimed, then such reclamation may be made and the land rendered useful to all and at their joint expense. In such case the absolute right of each individual owner of land must yield to a certain extent or be modified by corresponding rights on the part of other owners, for what is declared, upon the whole, to be for the public benefit.'' Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. Rep. 56. See also Bannerman v. Catts, 80 Fla. 170, 85 South. Rep. 336; Valley Farms Co. of Yonkers v. Westchester County, 261 U. S. 155, 43 Sup. Ct. Rep. 261; Berry v. Hardee, 83 Fla. 531, 91 South. Rep. 685; Kansas City Southern R. Co. v. Road Imp. Dist. No. 3 of Sevier County, Ark., 266 U. S. 379, 45 Sup. Ct. Rep. 136. In Myles Salt Co. v. Board of Comr's of Iberia & St. Mary Drainage Dist., 239 U. S. 478, 36 Sup. Ct. Rep. 204, the land was not appropriate for habitation and improvement, but it was an island of salt deposit ''rising abruptly 175 feet or more,'' that was so situated and conditioned that

it could not be benefited in any way by drainage operations, and an exorbitant tax was imposed by a subordinate body which abused its powers in including the island in the taxing district.

In Consolidated Land Co. v. Tyler, 88 Fla. 14, 101 South. Rep. 280, the taxing district was formed for the sole purpose of building a bridge, and it clearly appeared by facts shown that the complainant's land was so situated and conditioned that it could receive no real benefit from the construction of the bridge at the particular point and that the inclusion of such land *in the taxing district* was an abuse of legislative power that invaded complainant's organic property rights.

The contemplated benefits to all the lands in the Everglades Drainage District are not mere prophesy or speculation or conjecture, but are legislative determinations predicated upon benefits already accrued from drainage, and upon existing conditions and reasonable expectations sustained by experience and observation. See Kansas City Southern R. Co. v. Road Imp. Dist. No. 3 of Sevier County, Ark., 266 U. S. 379, 45 Sup. Ct. Rep. 136.

The object of an affirmative pleading is to state facts to which the court may apply the law in adjudicating rights. A demurrer challenges the legal sufficiency of a pleading; and for that purpose, a demurrer admits as against the demurrant the well-pleaded allegations or averments to which it is addressed. Goodman v. State, 88 Fla. 156, 101 South. Rep. 285. But a demurrer does not admit allegations that are not well pleaded; among them being allegations of conclusions of law, allegations of conclusions of fact not sustained by facts alleged, allegations that are contradicted by the record in the case or by other records or matters of which the court takes judicial notice, and allegations that the law does not permit to be proven. See

Apalachicola Land & Development Co. v. McRae, 86 Fla. 393, 98 South. Rep. 505, text 517; Byrne Realty Co. v. South Florida Farms Co., 81 Fla. 805, 89 South. Rep. 313; Amos v. Gunn, 84 Fla. 285, 94 South. Rep. 615; State *ex rel.* Buford v. Watkins, 88 Fla. 392, 102 South. Rep. 347; Brown v. Avery, 63 Fla. 355, 58 South. Rep. 34; Owen v. Baggett, 77 Fla. 582, 81 South. Rep. 888; Louisville & N. R. Co. v. Palmes, 109 U. S. 244, 3 Sup. Ct. Rep. 193.

The allegations of the bill of complaint assail the validity of a statutory determination of benefits and even if all of the allegations be admitted by the demurrer,. they are legally insufficient to show an abuse of legislative power in the enactment of Chapter 12016 authorizing the bond issue and the levy of an *ad valorem* tax upon all the lands in the Everglades Drainage District, therefore the prayer' that the issue of the bonds and the levy of the tax be enjoined should not be granted, even if the allegations as to lack of benefits to complainant's lands could be regarded as sufficient in law to justify relieving the particular lands of the tax as in Myles Salt Co. v. Board, 239 U. S. 478, 36 Sup. Ct. Rep. 204, and Consolidated Land Co. v. Tyler, 88 Fla. 14, 101 So. 280.

The allegations of the bill of complainant cannot fairly be regarded as showing an *abuse of legislative power* in including in the district and in determining benefits to and authorizing an *ad valorem* tax upon all the lands in the district, including the particular lands of the complainant that are alleged to be upon an elevated ridge and need no drainage. The Court takes judicial notice of the history and the natural connections affecting general drainage operations in the Everglades Drainage District, which in contemplation of law afford a basis for the legislative determinations complained of.

The allegations of the bill of complaint are insufficient

for any general or particular relief of the nature prayed for. The Chancellor apparently overruled the demurrer to the bill of complainant because of the allegations that a portion of complainant's land is situated upon an elevation that does not need draining and that such property cannot in any way be benefited by the drainage operations.

In A. C. L. R. R. v. City of Lakeland, 115 So., referred to by the Chancellor in making the order appealed from, the assessment was against abutting property for the entire cost of a street improvement in a city, the scheme of assessment was determined by the city authorities and not by the Legislature, and the benefits to the property assessed had to be direct and at least equal to the assessment. There a clear violation of the statute with reference to benefits and an abuse of administrative authority, were alleged in the bill of complainant and admitted by demurrer.

Here a special taxing district was formed *by statute,* the public improvement and the method of assessment, the amount of the bonds and the benefits to accrue to the property in the district were determined *by statute,* and the *ad valorem* assessments are little more than nominal. The benefits need not be direct, but may be indirect, incidental and general, having reference to advantages to the district as an entirety and not to immediate, direct benefits to particular parcels of property in the district. In this case the benefits having been determined by statute, such determination should not be disturbed by the courts in the absence of a clear and convincing showing that the purpose is to tax particular property without any corresponding benefit, but solely for the benefit of other property, or of a sufficient showing of other abuse of legislative power that violates organic property rights. There is no such showing here. See Withnell v. Rueching Const. Co., 249 U. S. 63.

Some at least of complainant's lands were included in

the drainage district formed by Chapter 5709, Acts of 1907; and by Chapter 6456, Acts of 1913, all of the lands in the district, including that of complainants were subjected to an acreage tax; and in 1921 all the property in the district was subjected to a one mill maintenance tax used for drainage purposes. It is now rather late for a complainant to allege generally that its lands cannot be benefited by the assessments imposed for drainage purposes, particularly when there are no sufficient specific allegations conclusively showing that there could have been no conceivable reasonable basis for the legislative findings of benefits, direct or indirect, to accrue to the lands. Certainly no arbitrary and oppressive burden upon complainant's land is alleged in such a way as to overcome the force and effect of a legislative determination repeatedly expressed in statutes. The assessment as made amounts to a mere nominal sum.

The provisions of Chapter 12016, Acts of 1927, authorizing the issue of a stated amount of bonds of the Everglades Drainage District to be obligations of the district and not of the State, and authorizing the levy as necessary of an *ad valorem* tax upon all the real property in the district for the payment of the bonds, and the provisions of the Act that are properly incidental to such main purposes as interpreted herein, constitutes a valid exercise of legislative power under the State and Federal Constitutions, and the statute accords with the purposes of the grant by Congress of the swamp and overflowed lands to the State and with the policy of the State to drain and otherwise improve such lands.

The rules and regulations of the Board should be made to conform to this opinion, particularly Rules numbered 3, 4, and 9.

The records in the two cases contain much of the history

of the Everglades drainage operations; and the briefs of counsel show exhaustive research and present most helpful discussions of the principles affecting the controversy, with voluminous useful citations of authorities.

The order overruling the demurrer to the bill of complaint is reversed in each case.

ELLIS, C. J., AND TERRELL, STRUM, BROWN AND BUFORD, J. J., concur.

PER CURIAM.—A petition for rehearing in case No. 638, suggests in effect that the Court failed to consider (1) that the demurrer is general and if the bill of complaint contains any equity the demurrer was properly overruled: (2) that Rules 3, 4, and 9 of the regulations adopted under Chapter 12016, are held to be broader than the Act as construed and that therefore the bill contains equity; (3) Rule 9 requires the bonds to contain recitals that are held to be illegal yet the Board ''is left free to issue bonds containing the very recitals which this Court has held would be invalid.''

The prayer in No. 638 is in effect that the Act be declared unconstitutional; that the rules and regulations be decreed to be unconstitutional and void and of no force or effect; that the provisions of the Act and of the rules and regulations which purport to bind the State to pay or secure the payment of the bonds, or to pay taxes under the Act, or to subject to the payment of such taxes, the assets of the Internal Improvement Fund, be declared to be unconstitutional and void and of no force or effect; and that the issue of the bonds and the levy of a tax under Chapter 12016 be enjoined, and for general relief.

The Court did not hold Rules 3, 4 and 9 to be void and of no force or effect in their entirety. Some of the provisions of Rules 3 and 4 and the provision of Rule 9 that

"such bonds shall not in any way recite or imply that they constitute bonds of the State of Florida," are not in conflict with the decisions in the case; and other provisions of the rules are required to be made to conform to the opinion of the Court, and the Board is not left free to issue bonds containing recitals which "would be invalid." It was held that the assets of the Internal Improvement Fund under Chapter 610, Laws of Florida, could by statute be subjected to the payment of taxes levied under Chapter 12016, that the elimination of other provisions of the latter chapter did not render the Act inoperative and that "the allegations of the bill of complaint are insufficient for any general or particular relief of the nature prayed for."

The adjudicated illegalities in separable portions of Chapter 12016 do not impair the efficiency of the valid portions of the Act; and the complainants' equity for the relief prayed is postulated upon the asserted invalidity of substansive portions of the Act that are adjudicated to be valid. Therefore an equity is not shown for the relief prayed and the general demurrer was good as against the controlling allegations of the bill of complaint.

Where the equitable relief prayed for is predicated upon alleged invalidity of a statute as an entirety and the statute is held to be valid in its essential provisions, the relief prayed may be denied or a demurrer to the bill of complaint may be sustained, even though separable portions of the statute be judicially eliminated as invalid, where the valid portions of the Act may be made effectual and in law negative the asserted equity.

Rehearing denied.

ELLIS, C. J., AND WHITFIELD, TERRELL, STRUM, BROWN AND BUFORD, J. J., concur.

594

PER CURIAM.—Where the equitable relief prayed for is predicated upon alleged invalidity of a statute as an entirety and the statute is held to be valid in its essential provisions, the relief prayed may be denied or a demurrer to the bill of complaint may be sustained, even though separable portions of the statute be judicially eliminated as invalid, where the valid portions of the Act may be made effectual and in law negative the asserted equity.

Affirmed.

*Fred H. Davis,* Attorney General; *Marvin C. McIntosh, Robt. R. Reed* and *David M. Wood,* for Appellants.

*Evans* and *Mershon, Charles R. Pierce* and *A. B. Simmons, Jr.,* for Appellees in No. 638.

PER CURIAM.—A petition for rehearing in Case No. 638, suggests in effect that the court failed to consider (1) that the demurrer is general and if the bill of complaint contains any equity the demurrer was properly overruled; (2) that Rules 3, 4 and 9 of the regulations adopted under Chapter 12016, are held to be broader than the Act as construed and that therefore the bill contains equity; (3) Rule 9 requires the bonds to contain recitals that are held to be illegal yet the Board "is left free to issue bonds containing the very recitals which this Court has held would be invalid."

The prayer in No. 638, is in effect that the Act be declared unconstitutional; that the rules and regulations be decreed to be unconstitutional and void and of no force or effect; that the provisions of the Act and of the rules and regulations which purport to bind the State to pay or to secure the payment of the bonds, or to pay taxes under the Act, or to subject to the payment of such taxes, the assets

of the Internal Improvement Fund, be declared to be unconstitutional and void and of no force or effect; and that the issue of the bonds and the levy of a tax under Chapter 12016 be enjoined, and for general relief.

The Court did not hold Rules 3, 4 and 9 to be void and of no force or effect in their entirety. Some of the provisions of Rules 3 and 4 and the provision of Rule 9 that "such bonds shall not in any way recite or imply that they constitute bonds of the State of Florida," are not in conflict with the decisions in the case; and other provisions of the rules are required to be made to conform to the opinion of the Court, and the Board is not left free to issue bonds containing recitals which "would be invalid." It was held that the assets of the Internal Improvement Fund under Chapter 610, Laws of Florida, could by statute be subjected to the payment of taxes levied under Chapter 12016, that the elimination of other provisions of the latter chapter did not render the Act inoperative and that "the allegations of the bill of complaint are insufficient for any general or particular relief of the nature prayed for."

The adjudicated illegalities in separable portions of Chapter 12016 do not impair the efficiency of the valid portions of the Act; and the complainants' equity for the relief prayed is postulated upon the asserted invalidity of substansive portions of the Act that are adjudicated to be valid. Therefore, an equity is not shown for the relief prayed and the general demurrer was good as against the controlling allegations of the bill of complaint.

Where the equitable relief prayed for is predicated upon alleged invalidity of a statute as an entirety and the statute is held to be valid in its essential provisions, the relief prayed may be denied or a demurrer to the bill of complaint may be sustained, even though separable portions of the statute be judicially eliminated as invalid, where the

valid portions of the Act may be made effectual and in law negative the asserted equity.

Rehearing denied.

ELLIS, C. J., AND WHITFIELD, TERRELL, STRUM, BROWN AND BUFORD, J. J., concur.

WILLIAM CARLTON, *Plaintiff in Error*, v. FLORIDA EAST COAST RAILWAY COMPANY, A FLORIDA CORPORATION, AND THE PULLMAN COMPANY, A CORPORATION, *Defendants in Error*.

Division B.

*Mitchell D. Price, Robert J. Boone* and *Price, Price, Neeley & Kehoe,* for Plaintiff in Error;

*Loftin, Stokes & Calkins, Robert H. Anderson* and *John E. & Julian Hartridge,* for Defendants in Error.

PER CURIAM.—The amended declaration herein does not wholly fail to state a cause of action, therefore, the demurrer thereto should have been overruled.   Wertz v. Tampa Electric Co., 78 Fla. 405, 83 South. Rep. 270; Peterson v. Oscar Daniels Co., 83 Fla. 29, 90 South. Rep. 621; Pero v. Corley, 87 Fla. 448, 100 South. Rep. 748; Foster v. St. Johns Electric Co., 86 Fla. 338, 98 South. Rep. 75; McDonald v. Exchange Supply Co., 88 Fla. 80, 101 South. Rep. 28; Cummings Mach. Works v. Clark, 89 Fla. 383, 105 South. Rep. 100; Hawkins v. Shore Acres Properties, 93