**B. A. PRESCOTT, JAS. A. MOSLEY, W. T. WHITCOMB, and JEWEL M. ALTMAN, as Members of the Board of County Commissioners of Hardee County, and as taxpayers and citizens of said County, v. THE BOARD OF PUBLIC INSTRUCTION OF HARDEE COUNTY, et al.**

32 So. (2nd) 731                                        June Term, 1947
November 14, 1947                                        En Banc
Rehearing denied December 15, 1947

*Mabry, Reaves, Carlton, Anderson, Fields & Ward,* for appellants.

*Rosin & Paderewski,* for appellees.

BARNS, J.:

Pursuant to Chapter 75 F.S.A. (1941) proceedings were had before the Chancellor for the validation of obligations

proposed to be issued pursuant to Chapter 24,224, Special Acts of 1947. Grady L. Burton as State Attorney filed an answer on behalf of the State and "B. A. Prescott, et al.," filed an answer as County Commissioners and as tax payers and citizens of Hardee County.

At final hearing the Chancellor entered a decree of validation which decree "Prescott, et al.," appealed to this Court pursuant to 75.08 F.S.A. (1941).

Chapter 24,224, (supra) was a Special Act applicable only to Hardee County and in effort to satisfy the requirements of Section 21 of Article III, State Constitution, the notice of intention to apply specified the proposal of a law: .

"(1) Requiring the Board of County Commissioners of Hardee County, Florida, to pay over to the Board of Public Instruction of Hardee County, Florida, from race track funds received by the Board of County Commissioners from the State of Florida . . . the sum of $15,000 annually plus one-half of the amount of interest to become due in each year on the warrants or other obligations issued by the Board of Public Instruction of Hardee County, Florida, under authority of the proposed act."—and

"(2) Authorizing the Board of Public Instruction to issue interest bearing warrants, certificates or other obligations in anticipation of the receipt by the said Board of such race track funds for the purpose of erecting and equipping a County School building."

Said Chapter 24,224, as enacted required the County Commissioners to pay over to the Board of Public Instruction:

" . . . the sum of ($18,000.00) eighteen thousand dollars annually, toward retirement of the principal and interest on the warrants or other obligations issued by said Board of Public Instruction as hereinafter provided; such annual payments to continue until all of said obligations and the interest thereon have been paid or their payment provided for."—and made all moneys so received and a trust fund for the payment of the obligations authorized to be issued by said Act, which obligations were not to exceed $225,000 nor to bear a rate of interest exceeding four (4) per centum per annum and which

obligations were to be secured only by the proceeds from the race track tax fund.

Appellants contend that the act as enacted is at such variance with the contents of the notice as to fail to comply with Section 21, Article III, (supra).

This Court speaking through Mr. Justice SEBRING in reference to Sections 11.02 - 11.04 F.S.A. and said Section 21 has stated:

" . . . These constitutional and statutory provisions were never intended to curtail the lawmaking power of the Legislature, or to take away from that lawmaking body its legislative description to determine the contents of its own enactments, once the required published notice has been given. So long as such laws as are finally enacted accord in substance and purpose and are germane to and within the scope of the subject-matter of the published notice, the organic provision, in this particular, has been complied with. The prime purpose of the constitutional requirement that notice be given in such instances is to apprise persons directly interested in the matter or thing to be affected of the nature and substance of the bill, so that such enactments, or the essential substance thereof, may be contested, if that is desired. When the notice is sufficient to accomplish that purpose the mandate of the organic provision has been satisfied. . . . "

State of Florida v. City of Miami, 153 Fla. Text 656, 15 So. (2nd) 481.

We find that these constitutional exactions have been met.

It is next contended that the said Chapter 24, 224 offends Sections 7, 8 and 9 of Article 12 of the State Constitution, to-wit:

APPORTIONMENT OF INTEREST ON STATE SCHOOL FUND

"Section 7. Provision shall be made by law for the apportionment and distribution of the interest on the interest on the State School Fund, all other means provided, including the special tax, for the support and maintenance of public free schools among the several counties of the State in proportion to the average attendance upon schools in the said counties respectively." Section 7, Article 12.

## County School Taxes

"Section 8. Each county shall be required to assess and collect annually for the support of the public free schools therein, a tax or not less than three (3) mills, not more than ten (10) mills on the dollar on all taxable property in the same." Section 8, Article 12.

## County School Fund; Distribution

"Section 9. In addition to the tax provided for in Section 8 of this Article the County School Fund shall consist of the proportion of the interest of the State School Fund and of the one mill State tax apportioned to the county, all capitation taxes collected within the county and all appropriations by the Legislature which shall with all other County School Funds be apportioned and distributed as may be provided by law and shall be disbursed by the County Board of Public Instruction solely for the support and maintenance of public free schools. Provided, that such apportionment and distribution shall be made by general law based upon some declared principle of classification to be determined by the Legislature." Section 9, Article 12.

Suffice it to say that the funds involved were not derived from taxes levied, collected, apportioned, distributed or appropriated by authority of said Section 7, 8 and 9 (supra).

It is a general rule of law that State taxes must be expended for state purposes; that county taxes must be expended for the purposes of the county; and that district taxes must be expended for the purposes of the district; and that the taxes of one unit cannot be expended for the purposes of another unit. However, our constitution makes one exception to this as follows:

## Distribution to Counties of Taxes on Pari-Mutuel Pools

"Section 15. The Legislature shall have the power to allocate and distribute to the several counties of the State, in equal amounts, and at such times as the Legislature shall determine, any portion of or all excise taxes now levied and collected, or hereafter levied or collected by the State of Florida from the operation of pari-mutuel pools." Article 9, Sec. 15, Florida Constitution.

Section 550.13 F.S.A. (1941) dealing with the *distribution* of tax revenue of the state from pari-mutuel pools as authorized by Section 15, of Article 9, of the Constitution, among other things, provides:

"All moneys received by the state treasurer as ex officio treasurer of the commission shall be distributed among the several counties of the State of Florida in the following proportions in the manner and at the times herein after specified:

"All such moneys, after expenses of the commission are paid, shall be divided into as many equal parts as there are counties in the state and there shall be remitted one part to each county. . . . "—and Section 550.14 F.S.A. (1941) relating to the *use* by the counties of the foregoing distribution provided that:

"When the moneys mentioned in Sec. 550.13 have been transmitted to the county commissioners of the several counties of the state in accordance with the provisions of this chapter, the county commissioners of the several counties may determine whether such moneys, or any part thereof, shall be converted into the county school fund, or to some other lawfully authorized fund, or shall be equally or otherwise apportioned to any two or more of such funds; . . . "

Chapter 24,224 (supra) is a special act relating to the *use* of county funds to be received by Hardee County pursuant to Section 550.13 (supra). This act in nowise offends the requirement that county funds be used for county purposes and it was competent for the Legislature to appropriate the funds by general act and by special act to fix their use as in said Chapter prescribed. In this respect, what the Legislature may permit it may require.

The decree appealed is affirmed.

THOMAS, C. J., TERRELL, BUFORD, CHAPMAN and SEBRING, JJ., concur.

ADAMS, J., not participating.