55 So.2d 566 (1951)
TOWN OF PALM BEACH
v.
CITY OF WEST PALM BEACH et al.
Supreme Court of Florida, en Banc.
December 11, 1951.
*567 E. Harris Drew, West Palm Beach, and J. Luther Drew, Palm Beach, for Town of Palm Beach, appellant.
C. Robert Burns, West Palm Beach, for City of West Palm Beach, appellee.
Harry A. Johnston and Gedney, Johnston & Lilienthal, all of West Palm Beach, for Palm Beach County, appellees.
Robie L. Mitchell and Mitchell & Pershing, all of New York City as amicus curiae.
MATHEWS, Justice.
This cause involves the constitutionality of House Bill 1200 enacted by the Legislature in 1951. The Bill is known as the Palm Beaches Sanitary District Bill. Under the terms of the bill the corporate limits of the towns of Palm Beach and the City of West Palm Beach constituted the Sanitary District. Each municipality maintains its separate corporate existence. The town of Palm Beach is located on the eastern shore of a body of water known as Lake Worth, and the City of West Palm Beach is situated on the western shore of this body of water.
The primary purposes of creating the Sanitary District were, collection, treatment, and disposal of sewage, as a health measure and to prevent as far as possible further pollution of the waters of Lake Worth.
The bill for a declaratory decree was filed by the town of Palm Beach against the City of West Palm Beach and Palm Beach County, and the persons constituting the Board of County Commissioners of *568 Palm Beach County. By appropriate proceedings, R.C. Bender, a citizen and taxpayer of the City of West Palm Beach, and of Palm Beach County, who owned property subject to municipal and county taxes, located in West Palm Beach and Palm Beach County, intervened as a defendant and filed an answer.
The Act is subject to a referendum election to be held on the second Tuesday in January, 1952, and will become effective only in case the majority of votes cast in each municipality shall be for the approval of the Act. The Act provides that the election shall be called and held by the Board of County Commissioners of Palm Beach County. At the time of the filing of the suit in the court below no expenses of any kind had been incurred toward calling or holding the election. Should the Act be declared unconstitutional, it is obvious that the County of Palm Beach and the taxpayers of Palm Beach would be put to considerable expense in calling and holding this election. The intervening taxpayer, Bender, prayed that the court enjoin and restrain the Board of County Commissioners from calling or holding the election in the event the court should determine that the Act in question was invalid and unconstitutional.
It is unnecessary to delineate in detail the various allegations of the pleadings, which we have carefully considered. The pleadings consisting of, the bill for declaratory judgment, the answer of Palm Beach County and of the Members of the Board of County Commissioners of Palm Beach County, the City of West Palm Beach, a municipal corporation, and the answer of the intervening taxpayer, Bender, present the following important questions:

Question No. 1.
Is the expenditure of county funds for the holding of the referendum election as provided in Section 14 of the Act, by the County of Palm Beach, an expenditure of county funds for purposes other than county purposes within the meaning of Section 5 of Article IX of the Constitution of Florida?

Question No. 2.
Is the appointment of the members of the Sanitary Board by the town of Palm Beach and the City of West Palm Beach, and by the Board of County Commissioners unconstitutional as being in conflict with Section 27 of Article III of the Florida Constitution?

Question No. 3.
Is the method provided in Section 8 of the Act for the retirement of the bonds of the district, that is, one-half to be paid by the town of Palm Beach, and one-half to be paid by the City of West Palm Beach, legal and valid in view of the requirements of Section 1, Article IX, and Section 1 of the Declaration of Rights of the Constitution of the State of Florida, and Section 1 of the Fourteenth Amendment of the Constitution of the United States?
The court below answered each of the above questions in the negative and held the Act to be valid. This appeal is prosecuted from that decree.
In reaching a conclusion in this case, the Court has been greatly assisted by splendid briefs and oral arguments of the attorneys who participated in presenting the matter.

Question No. 1.
Section 14 of the Act requires the County Commissioners to provide for the holding of a referendum election with the proviso that the Act shall not become effective unless it is approved by the qualified electors in each of the municipalities. Necessarily considerable money must be spent in holding this election by printing the ballots, renting polling places, paying for inspectors and clerks and other expenses incident to any such election. If the creation of this district and the holding of this election do not serve any county purpose, then the expenditure of county funds for holding such election would violate Section 5 of Article IX of the Constitution, F.S.A., and the holding of the election should be enjoined.
We find that the expenditures incident to this election will serve a county purpose. It is not necessary that the Act *569 say in so many words that the holding of the election will serve a county purpose. A legislative declaration of such a question is not final but is persuasive. Granting authority by the Legislature for the expenditure of county money is a legislative determination that it is for a county purpose.
For many years it was the policy of the state that public roads be built as district roads, or county roads, or state roads. Although a road may have been built by a road and bridge district and be called a district road, it may also serve a county purpose or a state purpose or both. This was definitely determined in the cases of Amos v. Mathews, 99 Fla. 1, 126 So. 308, and Carlton v. Mathews, 103 Fla. 301, 137 So. 815.
In Chapter 26,320, Laws of Florida, 1949, Cigarette Tax F.S.A. § 210.01 et seq., the Legislature definitely recognized that in building, maintaining and preserving within the municipal boundaries buildings and facilities for the preservation and improvement of public health, welfare and safety of the citizens a state purpose was served even though carried on and maintained by municipalities. In other words, these things served not only a municipal purpose but also a state purpose. In the case of Seaboard Airline Railway Co. v. Peters, Fla., 43 So.2d 448, this Court summarizes some of the former cases which had been adjudicated declaring what constituted a county purpose within this constitutional provision.
The Court takes judicial notice that the pollution of Lake Worth has for many years constituted a menace to health and the welfare of the inhabitants of a large part of Palm Beach County, if not all of the county. Clearing up this pollution will certainly serve a state and a county, as well as a municipal or district, purpose. Health and disease do not respect persons, races or sections. Many of the most deadly or contagious or infectious diseases will spread from individual to individual, from house to house, from city to city, from district to district, and from community to community. Disease strikes rich and poor  those who live in the hovels of the earth, as well as those who live in gilded palaces. It may be true that clearing up pollution in Lake Worth and the prevention of this health menace is of particular benefit to the people in the Sanitary District, but it is also of great benefit to the people of the entire county and will serve a county purpose.
We find no merit in the contention that the expenditure of county funds for holding this election violates Section 5, Article IX of the Constitution.

Question No. 2.
Section No. 3 of the Act provides that the governing Board of the District shall be composed of five persons, two members to be appointed by the governing body of the town of Palm Beach, two members to be appointed by the governing body of the City of West Palm Beach, and one member by the joint action of the governing bodies of Palm Beach and West Palm Beach, and in the event that they cannot agree on such appointment of the fifth member within twenty-five days, the appointment shall be made by the Board of County Commissioners of Palm Beach County. It is contended that Section 3 of the Act is violative of Section 27 of Article III of the Constitution, which is as follows: "The Legislature shall provide for the election by the people or appointment by the Governor of all State and county officers not otherwise provided for by this Constitution, and fix by law their duties and compensation."
This question has been determined by this Court on many occasions. The officers of this district are neither state nor county officers. They are district officers and it is not necessary that they be elected by the people or appointed by the Governor. In the case of State v. Ocean Shore Improvement Dist., 116 Fla. 284, 156 So. 433, the Act in effect placed the power in the hands of County Commissioners to make appointments of trustees of the Ocean Shore Improvement District. In that case the Court said: "A taxing district is not covered by that provision of the Constitution requiring that all officers be elected by the people or appointed by the Governor, consequently *570 the Legislature is at liberty to require that bond trustees or supervisors of such districts be designated in other ways, and that voting in said districts be limited to property owners."
See also to the same effect, State ex rel. Landis v. Reardon, 114 Fla. 755, 154 So. 868, and Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449.

Question No. 3.
It is urged that Section 8, which is the section of the Act providing for the retirement of the bonds of the district is illegal and invalid because it violates Section 1 of Article IX, and Section 14 of the Declaration of Rights of the Constitution of the State, and Section 1 of the Fourteenth Amendment of the Constitution of the United States. Section 8 of the Act provides that for the payment of the principal and interest on any bonds issued under the provisions of the Act, each of the towns; that is to say, the town of Palm Beach and the City of West Palm Beach shall pay to the Sanitary District in each year one-half of the amount required for paying principal and interest, etc. This section further provides that said municipalities shall impose and collect a sewage disposal service charge in addition to charges imposed and collected by the Sanitary Board itself. The charges imposed and collected by the municipalities together with the ad valorem levy provided for should provide funds sufficient at all times to make such payments to the Sanitary District. (Emphasis supplied.) The imposition and collection of such charges shall be governed by Section 7 of the Act so far as applicable.
Section 7 requires the Sanitary Board to fix sewage disposal service charges on its own account as distinguished from the service charges fixed by the municipalities. These service charges are required to be paid by the owners, tenants, or occupants of each lot or parcel of land which may be connected with, or may use the sewage disposal system. The Board is authorized to revise such schedule of charges from time to time so as to provide funds sufficient at all times to pay the cost of maintaining, preparing and operating such sewage disposal system, or systems. This section requires that the charges shall be "just and equitable", and it provides a broad field for the determination of what is "just and equitable". This provision of Section 7 with reference to the charges made by the Sanitary District is applicable to the charges made by each of the municipalities. So far nothing has been done, either by the municipalities or the district, to impose any service charges, and the validity of the same cannot now be questioned. State v. City of Miami, 157 Fla. 726, 27 So.2d 118; State v. City of Daytona Beach, 160 Fla. 204, 34 So.2d 309; Buchanan v. City of Miami, Fla., 49 So.2d 336.
The requirement is that the service charges shall be "just and equitable", and that such service charges are imposed by the district or by the municipalities. No complaint can now be made with reference to them. It is presumed that the officers charged with the duty of imposing and collecting such service charges will do their duty and comply with the law so that the charges will be "just and equitable".
The particular and most important complaint with reference to the provisions of Section 8 of the Act is that it provides for the levying and collection of an ad valorem tax, which is not uniform and equal throughout the District, and is, therefore, in contravention of Section 1 of Article IX of the state Constitution. The portion of Section 8 of the Act in question is as follows: "In each year while any bonds issued under the provisions of this Act shall be outstanding the governing body of each municipality shall levy a special tax upon all taxable property within such municipality over and above all other taxes authorized or limited by law sufficient to make such municipality's share of the above required payment to the Sanitary District in the following year; provided, however, that the amount of such tax may be reduced in any year by the amount derived by such municipality in the preceding fiscal year from sewage disposal service charges and paid to the Sanitary District; and provided further that in no case shall a default on the part of one municipality to pay its share of such required payments to the *571 Sanitary District cause or be grounds for or be construed to permit the other municipality to levy additional taxes against the taxable property in such latter municipality or to permit such later municipality to impose additional sewage disposal service charges against owners, tenants or occupants of lands or parcels of land within such latter municipality."
It should be borne in mind that the tax is not to be levied by the district as a district tax but it is levied by the municipalities of the district. Each municipality is required to pay one-half of the capital cost of the sewage disposal system to be constructed and the users should pay the cost of operation and maintenance of such system. Each municipality is at liberty to raise its half of the capital cost by the imposition of sewage disposal service charges in addition to the charges imposed by the Sanitary Board for operation and maintenance and by the levy of ad valorem taxes by the municipalities. Any ad valorem tax levied by each municipality for a municipal purpose will be uniform within the territorial limits of such municipality.
It is quite true that Section 1 of Article IX of the Constitution requires the Legislature to provide for "a uniform and equal rate of taxation". This provision of the Constitution has been construed many times to mean that the rate of taxation for state purposes shall be uniform throughout the state, for county purposes uniform throughout the county, for municipal purposes uniform throughout the municipality, and for district purposes uniform throughout the district.
It was clearly the legislative intent and mandate that the taxes to be levied should be levied by the respective municipalities, and that the rate of taxation in each municipality should be uniform. We are not without precedent in this state for the situation like the present one. This Court has held that there may be a different rate of taxation on property located in different parts of the territorial limits of a municipality where such classification is made to continue the original tax liability for bonds theretofore issued. State v. City of St. Petersburg, 127 Fla. 509, 173 So. 434; State v. City of Clearwater, 125 Fla. 73, 169 So. 602.
In the case of Hayes v. Walker, 54 Fla. 163, 44 So. 747, 750, this Court said:
"It is insisted that the proviso, contained in the second section of the act, that the territory and property placed within the limits and jurisdiction of the city of Tampa by the first section of the act shall not be liable for nor taxed to pay any existing bonded indebtedness of the city of Tampa, violates section 1 and 5 of article 9 of Constitution."
"The constitutional provisions quoted above, that require the Legislature to provide for a uniform and equal rate of taxation and a just valuation of all property, and require that the Legislature shall authorize incorporated cities or towns to assess and impose taxes for municipal purposes, and for no other purposes, and that all property shall be taxed for municipal purposes upon the principles established for state taxation, do not prohibit the Legislature from making proper and reasonable classifications of property for purposes of municipal taxation, so long as such classifications are not arbitrary, unreasonable, and unjustly discriminating, and apply similarly to all under like conditions, and do not deprive persons of property without just compensation or without due process of law, or do not deny to any person the equal protection of the laws, or do not violate any other provision of the organic law. (Authorities)
"Classifications for purposes of legislation may be made with reference to similarity of situation, circumstances, requirements, and convenience to best subserve the public interest. The test as to the validity of classifications for purposes of legislation is good faith, not wisdom. 7 Cyc. 185." (Emphasis supplied)
One of the most decisive cases on this question is that of State v. Town of Boynton Beach, 116 Fla. 534, 156 So. 539. It was alleged by the State that the Act in question arbitrarily imposed upon the municipality 50% of the debts of the town of Boynton without regard to the assessed *572 valuation or otherwise. The lower court found against this contention and the case was appealed to this Court where the final decree was affirmed.
Later the same question was raised in the case of Brann v. Town of Ocean Ridge, Fla., 38 So.2d 457. The bill of complaint among other things alleged: "Although the area included in Ocean Ridge contained, excluding the lake bottom, only eight per cent of the total area of the Town of Boynton, and there resided in this area only four per cent of the total population of the original Town of Boynton, and less than three per cent of the total indebtedness of the Town of Boynton was spent for improvements in the area lying within Ocean Ridge, and the actual value of the lands lying within Ocean Ridge was only a small fraction of the total value of the lands lying within the original corporate limits of the Town of Boynton." The Circuit Judge granted a motion to dismiss and the case was appealed to this Court. In that case fifty per cent of the indebtedness was taxed against eight per cent of the original area of the town of Boynton in which resided only four per cent of the total population and in which area less than three per cent of such total indebtedness was spent for improvements and the actual value of the lands lying within the original corporate limits.
The facts of the situation presented in this case are very similar to that present in the above two cases.
The power of the Florida Legislature with respect to its municipalities is absolutely unlimited except as restrained by the state or federal Constitution. City of Miami Beach v. Crandon, 1948, 160 Fla. 439, 35 So.2d 285; Coen v. Lee, 1934, 116 Fla. 215, 156 So. 747; and Jersey City v. Martin, 1941, 126 N.J.L. 353, 19 A.2d 40.
In the case of Bagnall v. Clarendon & Orangeburg Bridge District, 131 S.C. 109, 126 S.E. 644, 645, a bridge district was created to build a bridge between two counties. The two counties constituted a bridge district just as in this case two municipalities constitute the Sanitary District. In the South Carolina case each county was required to pay one-half of the cost of the bridge. The assessed valuation of the property in the two counties was different and the tax rate was different. The tax, however, was uniform in each county. In sustaining the Act the South Carolina court said: "A different view might be obtained if the levy and collection of the tax had been lodged in the bridge district commission with power over the two counties composing the bridge district, but such is not the case. It is purely a county affair, and the tax machinery of each county acts separately. The tax is uniform in Clarendon county and is likewise uniform in Orangeburg county. Consequently the provision of the Constitution requiring uniformity in taxation has not been violated."
See also the case of Essex County v. City of Newburyport, 254 Mass. 232, 150 N.E. 234, to the same effect.
The drainage district cases discuss the questions involved in this case even though these cases were based largely upon special assessments upon property especially and peculiarly benefited. In the case of Lainhart v. Catts, 73 Fla. 735, 75 So. 47, 53, involving the creation of a drainage district, the lands were divided in the district into three classes or zones. This Court said "While the rate varies as to each zone, yet it is equal and uniform as applied to every acre in each zone; no discriminations in favor of any particular acre or tract in any one class or zone being made." (Emphasis supplied.)
In the later case of Bannerman v. Catts, Governor, 80 Fla. 170, 85 So. 336, 343, this Court said: "True, whether the tax be a special assessment for local improvements, or whether it be for general taxation, the taxes must be uniform in the sense that it must be imposed upon the property subject to taxation or special assessment, so that the burden or charge on every parcel of land will bear a just proportion to that imposed on every other. Lainhart v. Catts, et al., supra. However, it is presumed that the Legislature in enacting the statute duly performed its duty. There being no constitutional prohibition against the passage of such statute, the act is valid, and the Legislature was, and of necessity must have *573 been, the judge of the amount of taxes to be levied in each zone, the number of zones to be provided for, and the benefits to be derived from the lands in the different zones by the improvements proposed. Having done this, it is not within the province of the court to substitute its will for the will of the Legislature." (Emphasis supplied.)
In this case each municipality; that is to say, the Town of Palm Beach and the City of West Palm Beach, will be benefited by the works in the district. The Legislature has determined that each municipality will benefit to the extent of fifty per cent of the cost of the improvements. Sufficient reasons existed for this legislative determination, and it is final. The rate of taxation in the City of West Palm Beach as to all persons and property in such municipality will be uniform and the same applies to the Town of Palm Beach. The district itself levies no taxes. It will be impossible for any two municipalities in the state with different conditions and different methods of assessment, to have a uniform rate of taxation as long as their desires for municipal improvements and other municipal functions would be vastly different.
The ad valorem tax authorized to be levied is a special tax for a special purpose. The tax levied in each municipality must be uniform and at an equal rate in each municipality. Even though the rate of taxation may be different in each of the municipalities, such levy does not violate the provisions of Section 1 of Article IX of the Constitution so long as the rate is uniform throughout the territory embracing the particular municipality.
We have carefully considered every other assignment of error and they are without merit. The Act in question, known as House Bill 1200, enacted by the Legislature of the State of Florida in 1949, does not violate any of the provisions of the state or federal Constitution raised by the pleadings and shown by the record in this case.
The Decree of the Chancellor is affirmed.
SEBRING, C.J., and TERRELL, CHAPMAN, THOMAS, HOBSON and ROBERTS, JJ., concur.