106 So.2d 909 (1958)
Frank KIRKLAND, Arthur G. Preacher, Howard Hornsby, David L. Sykes, and Joe Edd Ward, as members of and constituting the Board of County Commissioners of Liberty County, Florida, and W.A. Woodward, As Clerk of the Circuit Court, in and for Liberty County, Florida, Appellants,
v.
Richard PHILLIPS, S.P. Fairchild, Frances Gunn, Charles W. Roberts, Sr., and John Wynn, as members of and constituting the Board of Port Commissioners for the Liberty County Port Authority, Appellees.
Supreme Court of Florida.
November 21, 1958.
Rehearing Denied December 16, 1958.
*911 J. Kenneth Ballinger, Tallahassee, and Marion B. Knight, Blountstown, for appellants.
J. Lewis Hall of Hall, Hartwell & Douglass, Tallahassee, for appellees.
THORNAL, Justice.
Appellants Kirkland and others, who were plaintiffs below, seek reversal of a final decree of the Chancellor upholding the constitutionality of two local acts of the Legislature.
We are called upon to determine the constitutionality of Chapter 30946, Laws of Florida 1955, and Chapter 57-1533, Laws of Florida 1957, against the contention of appellants that the statutes respectively violate Sections 20 and 16 of Article III, Constitution of Florida, F.S.A.
By Chapter 30946, Laws of Florida 1955, a local act, the Legislature undertook to create a Port Authority for Liberty County. By Section 2 of the act it was provided that the governing board of the Port Authority would be a Board of Port Commissioners which shall consist of the County Commissioners of Liberty County and their successors. The Port Authority was generally authorized to construct wharves, docks, airports, shipping facilities, lighting and water systems, terminal facilities and other activities usually found in such authorizing legislation. The Clerk of the Circuit Court was made ex officio Clerk of the Board of Port Commissioners. Section 5 of the act appropriated $15,000 of the additional race track monies to be distributed to Liberty County by Section 550.16, Florida Statutes, F.S.A., to the Board of County Commissioners to be held in trust subject to expenditures by the Board of Port Commissioners in carrying out the purposes of the act.
Chapter 57-1533, Laws of Florida 1957, another local act, amended Sections 2 and 3 of Chapter 30946, supra, by providing that the Board of Port Commissioners of the aforesaid Port Authority was to be composed of five members, one from each County Commissioner's district, to be appointed by the Governor. Instead of naming the Clerk of the Circuit Court ex officio secretary, the amending statute authorized the Board to employ a secretary. The second act also directed the Board of County Commissioners of Liberty County and the Clerk of the Circuit Court to deliver over to the newly appointed Board of Port Commissioners all property, papers, monies, furniture, equipment and supplies immediately upon the appointment of the new Board.
Chapter 57-1533, Laws of Florida 1957, took effect June 29, 1957. On June 27, 1957, the Board of County Commissioners in their capacity as Port Authority Commissioners transferred $25,000 from the Port Authority fund to the Board of County Commissioners to be deposited in the Jail Building Fund for the purpose of renovating an abandoned jail building. The renovated building purportedly was to be used as housing facilities for both the County Commissioners and the Port Authority. When the new Board of Port Commissioners was appointed shortly after June 29, 1957, they demanded the return of the $25,000 and other property of the Port Authority. The County Commissioners alleging themselves to be in doubt as to the extent of their powers and duties in the premises filed this complaint. By the complaint they asked the Circuit Judge to enter a declaratory decree delineating their powers and duties as well as the powers and duties of the members of the new Port Authority. The appellee-Port Commissioners who were appointed under *912 the 1957 act counterclaimed demanding the return of the Port Authority funds and property specifically described above. The appellants, plaintiffs below, alleged in their complaint the unconstitutionality of both the 1955 and 1957 local acts for various reasons which we hereafter detail.
On the basis of the pleadings the Chancellor was of the view that the statutes were constitutional. He sustained the position of the appellee Port Authority. He directed the appellants County Commissioners to return to the Port Authority the funds which had been transferred into the Jail Building Fund two days before the effective date of the 1957 statute. Reversal of this decree is now sought.
The appellants contend that Chapter 30946, Laws of Florida 1955, violates Article III, Section 20, of the Constitution of Florida, which prohibits the Legislature from passing special or local laws "regulating the jurisdiction and duties of any class of officers, except municipal officers, * * *." Appellants contend also that Chapter 57-1533, Laws of Florida 1957, violates Article III, Section 16, of the Constitution of Florida, because of an alleged defective title.
The appellees, of course, contend that the two statutes are not violative of the cited constitutional provisions.
It appears to be the position of the appellants that by naming the Board of County Commissioners as the Board of Port Commissioners in the 1955 act, and further undertaking to specify the powers and duties of the Board of Port Commissioners, the Legislature did violence to Article III, Section 20, supra. This is so, they say, because the cited section of the Constitution prohibits local laws regulating the jurisdiction or duties of state and county officers. They claim that by Section 125.01, Florida Statutes, F.S.A., the powers and duties of county commissioners are defined generally. This leads them to the contention that the additional specific duties prescribed by the 1955 act constituted an unconstitutional imposition of special duties on county commissioners. They contend further that by the specific designation of $15,000 of race track funds for the use of the Port Authority, the Legislature violated the same section of the Constitution by depriving the county commissioners of their lawful discretion in the handling and disposition of county monies.
We think neither of these contentions is sound. It appears to us that the objectives to be accomplished by Chapter 30946, Laws of Florida 1955, establishing the Port Authority for Liberty County, are well within our many precedents defining county purposes. It is clear that the Legislature contemplated establishing an agency with the power to construct and operate such public facilities as wharves, docks, airports, ship and railroad terminals and other public facilities now so commonly conducted and carried on at the county level. Our statute books are full of authorizing legislation establishing similar authorities for many Florida counties. There are taxing districts, hospital districts, drainage districts and many other similar districts or such agencies of county government that have been created by local acts of the Legislature. The cases sustain the notion that these agencies serve a useful and valid county function. In many instances they have contributed immeasurably to the growth and development of the counties which they serve. We have no difficulty, therefore, in reaching the conclusion that the functions authorized to be performed by the Port Authority for Liberty County were valid and proper county functions. Having arrived at this point, it is perfectly clear that the duties imposed upon the county commissioners by the 1955 act were merely incidental to the main purposes of the act and being such the act will not be considered as violative of Article III, Section 20, of the Florida Constitution. State ex rel. Glover *913 v. Holbrook, 129 Fla. 241, 176 So. 99, and cases therein cited.
We refrain from burdening this opinion with the abundance of our own decisions which could be cited to support the proposition last stated. A few will be illustrative. In State ex rel. Landis v. Reardon, 114 Fla. 755, 154 So. 868, we sustained a local act which abolished the Board of Commissioners of St. Lucie Inlet District and Port Authority theretofore existing and replaced it with a new board consisting of the five County Commissioners of Martin County and the Chairman and one member of the Board of County Commissioners of St. Lucie County. The imposition of these added responsibilities to the normal functions of the County Commissioners was held not violative of the Constitution.
In State ex rel. Watson v. Crooks, 153 Fla. 694, 15 So.2d 675, we upheld a local act abolishing the Ft. Pierce Port District and substituting in lieu thereof the Ft. Pierce Inlet District to be governed by the Board of County Commissioners of St. Lucie County as the Board of Commissioners of the Inlet District.
In State ex rel. Hanson v. Morqus, 160 Fla. 215, 34 So.2d 113, we held that a local act abolishing the City of Arcadia and creating the Arcadia Municipal District in its stead did not violate Article III, Section 20, Florida Constitution. This was so even though the act also provided that the Board of County Commissioners, County Judge and the Sheriff of De Soto County would discharge various municipal functions under the newly created Municipal District.
We think that the foregoing decisions dispose of the contention of the appellants that the 1955 act violated Article III, Section 20, supra, by imposing the functions of the Port Commissioners upon the County Commissioners.
We move on to the contention that the appropriation to the use of the Port Authority of $15,000 of additional race track funds otherwise due Liberty County violates Article III, Section 20, supra, by depriving the Board of County Commissioners of their control of county funds by local act. Here again we judicially know that in innumerable instances the Legislature has designated certain portions of additional race track funds to be used for various county purposes. Article IX, Section 15, Florida Constitution provides:
"The Legislature shall have the power to allocate and distribute to the several counties of the State, in equal amounts, and at such times as the Legislature shall determine, any portion of or all excise taxes now levied and collected, or hereafter levied or collected, by the State of Florida from the operation of pari-mutuel pools."
It will be noted that the quoted provision of the Constitution authorizes the Legislature to allocate and distribute race track funds in equal amounts to the several counties of the State. There is no requirement that the Legislature arrange for these funds to be paid to the Board of County Commissioners nor is there any constitutional prohibition against legislative allocation of a part of the funds due a particular county to a particular county purpose. Furthermore, the constitutional provision dealing with taxes collected on the operation of pari-mutuel pools does not require the Legislature to allocate the funds to the various counties by general law nor does it prohibit the Legislature from allocating such funds by special or local law. It is true that by Section 550.16, Florida Statutes, the Legislature has by general law made provision for the distribution of the so-called additional race track tax monies. The fact that the Legislature has made this provision by general law would offer no constitutional impediment to a legislative provision by special or local law allocating the use of these funds for a special county purpose in a particular county. Inasmuch as when distributed these funds become county funds we think it obvious *914 that the Legislature could not allocate the use of such funds for a non-county purpose. In fact, we have so decided. See City of Lynn Haven v. Bay County, Fla. 1950, 47 So.2d 894, and State ex rel. Parrish v. Lee, 156 Fla. 578, 23 So.2d 731. In the cases last cited it was held that the Legislature could not allocate the use of race track funds due particular counties for the use of certain municipalities in those counties.
By contrast, however, in Prescott v. Board of Public Instruction, 159 Fla. 663, 32 So.2d 731, we upheld a local act directing the County Commissioners of Hardee County to pay over to the Board of Public Instruction of that county certain portions of race track funds which would otherwise be due to the county.
The conclusion impelled by an analysis of the constitutional provision as well as our own decisions is that the Legislature has the power by local act to allocate the use of the so-called additional race track taxes for a particular county purpose. Having once determined that the purpose to be served by the expenditure of the funds is a county purpose, we hold that it is within the wisdom of the Legislature to assign the use of a portion of the funds to that purpose.
We come now to the contention of the appellants that Chapter 57-1533, Laws of Florida 1957, another local act, is unconstitutional because of an alleged defective title. The title to the act reads as follows:
"An Act relating to the Liberty County Port Authority; amending Sections 2 and 3 of Chapter 30946, Acts 1955, prescribing the membership, terms of office and powers and duties of the Board of Port Commissioners of the Port Authority of Liberty County; and providing an effective date."
It appears to be the position of the appellants that this title did not give fair notice of the contents of the act changing the membership of the Board of Port Commissioners. We think it unnecessary to engage in a prolonged discussion of our own cases which hold that the title to a legislative enactment does not necessarily have to delineate in detail the contents of the body of the act. Article III, Section 16, of the Constitution of Florida, merely requires a statement of the substance of the act in the title. The reason for the requirement is simply to indicate to one who reads the title the general nature and substance of the content of the body of the statute. It appears to us that an examination of the title here in question, making specific reference to particular sections of the 1955 act and stating positively that the act prescribes the membership, terms of office and powers and duties of the Board of Port Commissioners, adequately forewarned any reasonably cautious person that the Legislature was definitely dealing with the membership of this board. It is perfectly clear from the title that by the act the Legislature undertook to prescribe the membership of the Board as well as to act on its powers and duties. We deem the title sufficient to meet the requirements of the Constitution.
Before concluding we mention in passing our decision in Budget Commission of Pinellas County v. Blocker, Fla. 1952, 60 So.2d 193. This is done to avoid any thought by the appellants that we have overlooked the decision upon which they so strongly rely. In the case last cited we held invalid a local law creating a Budget Commission in Pinellas County for the reason that it had the effect of practically obliterating the financial powers and duties of the constitutionally established county officers. Unlike the statute involved in the instant appeal, the Pinellas County act did not merely incidentally affect the fiscal power of the various constitutional officers of the county. It reduced those officers to a position of complete subordination to the authority of the Budget Commission. We think the case relied upon by the appellants does not control the instant situation.
*915 In view of the foregoing, the Chancellor ruled correctly in sustaining the two statutes in question against the assault on their constitutionality. His order directing the return of the Port Authority property and funds by the appellants to the appellees naturally followed and was likewise correct.
The decree is
Affirmed.
TERRELL, C.J., and THOMAS, HOBSON and DREW, JJ., concur.