Randall M. Buchanan Superintendent Madison County District School Board Modison
QUESTION:
If Ch. 65-1869, Laws of Florida, is still in force, may the district school board issue bonds under it to construct a high school?
SUMMARY:
The Madison County district school board is empowered by law to construct and equip school buildings and, to pay the costs of these projects, to issue certificates of indebtedness, payable solely from funds accruing to the board pursuant to Chs. 550 and 551, F. S., relating to racetracks and jai alai frontons, and Ch.67-795, Laws of Florida. Chapters 65-1869 and 67-795 which have not been amended or repealed are presumptively valid and remain in force until repealed under the terms of s. 6(a), Art. XII, State Const.; and the school board may exercise those powers granted therein.
Chapter 65-1869, Laws of Florida, expressly authorizes the district school board of Madison County `to acquire, build, construct, erect, enlarge and improve school buildings and to furnish and equip said school buildings.' Section 1, Ch. 65-1869. To pay the costs of these projects, the board is authorized to issue certificates of indebtedness not to exceed the aggregate sum of $1,500,000 and which must mature within 30 years. Section 2, Ch. 65-1869. Although s. 2, Ch. 65-1869, provides that the certificates may bear interest at a rate not to exceed 6 percent per annum, the maximum interest rate on any certificate issued under Ch. 65-1869 is now controlled by s. 215.685, F. S. See s. 215.685(3), F. S., which provides that all laws, general or special, in conflict with the provisions of s. 215.685 are expressly repealed and superseded subject to an exception not pertinent to the instant inquiry. Thus, under s. 215.685(1), F. S., any `[b]onds, certificates, or other obligations of any type or character, authorized and issued by . . . districts . . . or any other public body, agency, or political subdivision of the state may bear interest at a rate not to exceed 7.5 per cent perannum.' (Emphasis supplied.)
Section 4 of Ch. 65-1869, Laws of Florida, provides:
 The principal of and interest on the certificates herein authorized shall be payable solely from the portion of race track funds accruing annually to . . . the board pursuant to chapters 550 and 551, Florida Statutes, and senate bill no. 1071 enacted at the 1965 session of the Florida legislature.
Senate Bill No. 1071, enacted as Ch. 65-963, Laws of Florida, provided that all moneys accruing to Madison County under Chs. 550 and 551, F. S., relating to race tracks and jai alai frontons, be annually allocated and distributed equally between the board of county commissioners and the board of public instruction of Madison County. Chapter 65-963 was repealed and supplanted by Ch.67-795, Laws of Florida, which provides:
 All moneys accruing to Madison County under the provisions of Chapters 550 and 551, Florida Statutes, relating to race tracks and jai alai frontons, shall annually be allocated and distributed as follows: The first twelve thousand five hundred dollars (12,500.00) of these moneys shall be allocated and paid for the use and benefit of the Medison county health and hospital board; all the remainder of the tax accruing from race tracks and jai alai frontons shall be distributed equally between the board of county commissioners of Madison County and the board of public instruction of Madison County. [Section 2, Ch. 67-795, Laws of Florida.]
Chapter 67-795, Laws of Florida, also provides that the moneys appropriated to the board of county commissioners and the board of public instruction shall be paid directly by the appropriate state officials to such bodies.
Under s. 7, Art. VII, State Const., the Legislature may allocate (in whole or in part) excise taxes levied and collected from the operation of pari-mutuel pools to the several counties of the state; when such allocations to the counties are made, the funds must be distributed in equal amounts to the several counties. See
s. 15, Art. IX, State Const. 1885, which similarly provided for the allocation and distribution of pari-mutuel taxes to the several counties. The racetrack funds collected pursuant to Ch. 550, F. S., and distributed to the counties, however, may be appropriated for any valid county purpose. See Prescott v. Board of Public Instruction, 32 So.2d 731 (Fla. 1947), in which the court held that a special act requiring a county to pay over moneys received from racetrack funds to the board of public instruction did not violate the requirement that county funds be used for county purposes. Moreover, this office in AGO 071-112 concluded that racetrack funds distributed to a county pursuant to s. 550.14, F. S., may be appropriated to the district school board and to any lawful county purpose, but not to the use of a municipality. Cf. State ex rel. Parrish v. Lee, 23 So.2d 731 (Fla. 1945), in which the court held that a special law appropriating 50 percent of racetrack funds allocated to counties having municipal
hospitals for the maintenance of these hospitals was violative of the constitutional provisions; City of Lynn Haven v. Bay County,47 So.2d 894 (Fla. 1950); Okaloosa County Water and Sewer District v. Hilburn, 160 So.2d 43 (Fla. 1964).
Based upon the foregoing, it appears that the moneys received from racetrack and jai alai funds may be appropriated to the district county school without violating the constitutional provision. Section 550.13, F. S., generally provides for the division of money by the State Treasurer as the ex officio treasurer of the Division of Pari-mutuel Wagering pursuant to Ch. 550, F. S. The funds received are collected from the operating revenues and various admissions and occupational license taxes imposed by Ch. 550. See, e.g., s. 550.09, 550.10, 550.4902, F. S. The moneys collected pursuant to Ch. 551, F. S., are distributed in the same manner as in Ch. 550, F. S. Section 551.10, F. S., provides that `[a]ll moneys mentioned in this chapter derived from taxes on admission, wagers and pari-mutuel pools shall be disbursed by the state treasurer pursuant to existing laws relating to the disposition of funds derived from the operation of race tracks, and in the same manner.' Although all such funds collected pursuant to Chs. 550 and 551, to the extent to which such moneys, after expenses of the Division of Pari-mutuel Wagering are paid, do not exceed in any one year the total of such moneys after expenses so paid for the fiscal year 1971, are normally distributed in equal parts to the several counties (see, e.g., s. 550.13[1]), s. 550.14(2) provides:
 . . . in those instances where, by virtue of any local or special law now in force or hereafter enacted, any portion of such funds is earmarked for use by the school board of any county of this state, the county commissioners shall, upon receipt of such funds, remit the proportionate allocated part thereof to such school board, and the money so remitted shall be used for the exclusive purposes aforesaid; provided, further, in those instances where any other method of remittance is prescribed by local or special law, then such method shall be followed. (Emphasis supplied.)
See s. 2, Ch. 67-795, Laws of Florida, which provides that the moneys appropriated to the board of county commissioners and the board of public instruction shall be paid directly by the appropriate state officials to such bodies.
Chapters 65-1869 and 67-795, Laws of Florida, have not been since amended or repealed, and, as legislative enactments, they are presumptively valid and must be given effect until judicially declared invalid. City of Sebring v. Wolf, 141 So. 736 (Fla. 1932). Although enacted prior to the adoption of the 1968 Constitution, all laws in effect upon its adoption, to the extent not inconsistent with the 1968 Constitution, remain in force until they expire by their own terms or are repealed. See s. 6(a), Art. XII, State Const. Moreover, although Ch. 65-1869 refers to the board of public instruction, the board has been replaced by the district school board pursuant to s. 4, Art. IX, State Const., and all powers given to the board of public instruction under Ch.65-1869 should apply under the act with equal force to the successor district school board under the 1968 Constitution. Cf. AGO 069-56 in which this office stated that `Article IX, s. 4 of the State Const. of 1968 has replaced county schools and county school districts with school districts consisting of one or more counties, which differ little legally from said county schools and county school districts under the State Const. of 1885, as amended.' Thus, although enacted prior to the adoption of the 1968 Constitution, Chs. 65-1869 and 67-795, Laws of Florida, appear to be still in effect and the district school board, as the successor of the board of public instruction, may exercise the powers granted therein.
Section 7 of Ch. 65-1869, Laws of Florida, provides that `[n]o referendum or election of freeholders or qualified voters in the county shall be required for the exercise of any of the provisions of this act, unless such referendum or election is required by theConstitution of Florida. (Emphasis supplied.) The certificates of indebtedness issued by the Madison County school board under Ch.65-1869 are payable from and secured by a lien on and a pledge of the race track and jai alsi revenues or taxes accruing to the board under Chs. 550 and 551, F. S.; these moneys are excise taxes and no referendum is required as a condition precedent to their issuance and sale under either the 1968 or 1885 Constitution. Seegenerally State v. Board of Public Instruction, Okaloosa County,215 So.2d 723 (Fla. 1968) (no referendum is required if certificates of indebtedness or revenue certificates are payable from excise taxes or sources other than ad valorem taxes); cf. State v. Orange County, 281 So.2d 310 (Fla. 1973), in which the court held that a noncharter county had the power to issue capital improvement bonds, repayable solely from the county's share of racetrack and jai alai funds, without an approving referendum.
Prepared by: Joslyn Wilson, Assistant Attorney General