Willie D. Wise Clerk Circuit Court Blountstown
QUESTION:
Does a board of county commissioners have the authority to loan county funds to a medical student for the purpose of inducing that student to practice medicine in the county after he receives his medical degree?
SUMMARY:
Noncharter counties are not authorized by general law to lend or advance or donate county funds to provide financial assistance to a medical student to enable him to complete his medical education and as an incentive to practice medicine in the county after he receives his medical degree.
You question, in your capacity as ex officio county auditor and custodian of all county funds as provided in s. 1(d), Art. VIII, State Const., the legality of the expenditure of county funds pursuant to a loan agreement recently entered into by the Board of County Commissioners of Calhoun County. It appears from the copy of the agreement enclosed with your request that the board of county commissioners has agreed to pay a medical student who is `financially unable to pay the sums necessitated for his completion of his studies in medical school' $400 per month for up to 36 months to enable this student to acquire a medical degree. The loan is to be forgiven at the rate of $400 per month if this student, after obtaining his medical degree, practices medicine in Calhoun County. In the event he at any time discontinues the practice of medicine in the county, the loan is to be repaid at the rate of $400 per month, plus 10 percent accrued interest, `from the date of the receipt of the principal.'
Noncharter counties may exercise only those powers which are expressly conferred by general or special law. See s. 1(f), Art. VIII, State Const. See also State ex rel. Volusia County v. Dickinson, 269 So.2d 9 (Fla. 1971), and Weaver v. Heidtman,245 So.2d 295 (1 D.C.A. Fla., 1971). Furthermore, noncharter counties may exercise only those implied powers which are necessary to effectuate some express power. See s. 125.01(3), F. S., and Crandon v. Hazlett, 26 So.2d 638 (Fla. 1946). The general rule regarding loans of county funds is stated at 20 C.J.S. Counties s. 237 (1940): `When authorized to do so by statute, counties acting through their proper officers may make loans of surplus funds.'Cf. s. 125.31, F. S., as amended by s. 1, Ch. 79-119, Laws of Florida, which authorizes the investment of county surplus funds in certain enumerated instruments and institutions, and part IV of Ch. 218, F. S., which permits counties to invest in the local Government Surplus Funds Trust Fund. Also, order for the county to properly budget for the expenditure of public funds, there must be some constitutional or statutory authorization therefor, just as on the state level for every appropriation there must be some constitutional or statutory authorization for the expenditure of funds for state public purposes. See State ex rel. Kurz v. Lee,163 So. 859 (Fla. 1935). Cf. State ex rel. Gulfstream Park Racing Association, Inc. v. Florida State Racing Commission, 70 So.2d 375
(Fla. 1953). In the absence of such authorization, an expenditure cannot be made. For example: In AGO 077-38, this office concluded that noncharter counties are not authorized by general law to lend county funds derived from ad valorem tax revenue or from other sources to district school boards, and, therefore, the county could not lend county funds for such purpose; in AGO 075-92 it was concluded in part that the board of trustees of a county hospital had no statutory authority to use county hospital funds for `start-up operational capital' for a private nonprofit hospital corporation to provide additional hospital facilities in the county; in AGO 066-105, this office concluded that the advancement of travel expenses to a public employee could not be made because it was not then authorized by statute; and in AGO 054-166, July 12, 1954, Biennial Report of the Attorney General, 1953-1954, p. 153, it was concluded that a board of county commissioners was not empowered to spend county funds to help employ a county school nurse.
The authority for a noncharter county to lend county funds to an individual for the purposes described in the enclosed loan agreement must therefore appear, if at all, in the powers granted to noncharter counties by the Legislature. Chapter 125, F. S., sets out the general powers of noncharter counties. The only loan or investment of county funds authorized by Ch. 125 is the loan or investment of surplus funds provided for in s. 125.31. See also
part IV, Ch. 218, F. S. No other investments or loans of county funds are authorized by Ch. 125. No provision in Ch. 125 contains authorization for a noncharter county to give or lend county funds to provide financial assistance to a medical student to complete his studies in medical school and as an incentive to practice medicine in the county after he receives his medical degree. My research has not revealed any general law, nor has any other law been brought to my attention, which authorizes a noncharter county to appropriate or expend county funds for such a purpose. The general rule of law is that county taxes must be expended only for county purposes. See s. 9, Art. VII, State Const.; Prescott v. Board of Public Instruction of Hardee County, 32 So.2d 731 (Fla. 1947); and Town of Palm Beach v. City of West Palm Beach,55 So.2d 566 (Fla. 1951). Cf. Okaloosa County Water and Sewer District v. Hilburn, 160 So.2d 43 (Fla. 1964). The advancing or lending of county funds to a medical student to allow that student to finish medical school would not appear to be a county purpose. Thus, no statutory authority exists which enables a county to appropriate or expend county funds for a student to complete his studies in medical school.
Section 10, Art. VII, State Const., prohibits a county from giving, lending, or using its credit or taxing power to aid any person. It would be constitutionally questionable whether such expenditure or loan could be lawfully made under these circumstances. The paramount consideration for the expenditure of county funds is that the proposed expenditure must serve a public, as opposed to a private, purpose. See Burton v. Dade County,166 So.2d 445 (Fla. 1964); State v. Town of North Miami, 59 So.2d 779
(Fla. 1952); City of Daytona Beach v. King, 181 So. 1 (Fla. 1938); Padgett v. Bay County, 187 So.2d 410 (1 D.C.A. Fla., 1966); and Collins v. Jackson County, 156 So.2d 24 (1 D.C.A. Fla., 1963). Seealso 81A C.J.S. States s. 205 (1977) in which the rule is stated: `Generally, under express or implied constitutional provisions, public funds may be used only for a public purpose.' Pertaining to counties, it is stated at 20 C.J.S. Counties s. 243 (1940) that `[a] county may not, where constitutional or statutory prohibitions exist . . . loan its credit, to or in aid of any individual . . . .' And see 81A C.J.S. States ss. 207, 209, 210 (1977); 56 Am. Jur.2d Municipal Corporations s. 588 (1971). In O'Neill v. Burns, 198 So.2d 1 (Fla. 1967), the Supreme Court applied this prohibition, as contained in s. 10, Art. IX, State Const. 1885 (the predecessor of current s. 10, Art. VII), to an appropriation of state funds to the Junior Chamber of Commerce International. The court, at page 4, quoted with approval the trial court in that case:
 It is only when there is some clearly identified and concrete public purpose as the primary objective and a reasonable expectation that such purpose will be substantially and effectively accomplished, that the state or its subdivision may disburse, loan or pledge public funds or property to a nongovernmental entity . . . .
The same principle is applicable to a private individual. See also
Brumby v. City of Clearwater, 149 So. 203 (Fla. 1933), in which the Supreme Court invalidated a contract between the municipality and a private individual under which the municipality agreed to dredge a channel leading to the individual's place of business. The court determined that such an expenditure would violate the constitutional prohibition against using the government's taxing power for a private use. And see AGO 072-129, in which this office concluded:
 [C]onstruction of a doctor's building by a county or Hospital Corporation to be leased to and operated under the supervision and control of private physicians in the private practice of medicine would probably violate the constitutional prohibition against a county's or special district's using its taxing power or credit in aid of private persons or corporations . . . .
It would seem that a loan to a medical student to enable him to complete his medical education would serve a private, as opposed to a public, purpose. While the public (in this case, the residents of Calhoun County) may receive an incidental benefit if the medical student elects upon graduation to, and does in fact, practice medicine (for personal gain or profit) in the county, the rule is that an expenditure must primarily benefit the public, with any benefit to private interests only incidental and secondary. See O'Neill v. Burns, supra. Moreover, this contract in no way assures that the medical student, once he receives his degree, ultimately will practice medicine in Calhoun County; it merely allows forgiveness of the loan if he does decide to practice there. If he does not practice there, or if he should discontinue such practice, he is obligated only to repay the loan with interest.
In conclusion, it is the opinion of this office that noncharter counties are not authorized by general law to lend, advance, or donate county funds to provide financial assistance to a medical student to enable him to complete his medical education and as an incentive to practice medicine in the county after he receives his medical degree.
Prepared by:
Craig B. Willis Assistant Attorney General