Mr. Christopher C. Ford County Attorney Lake County
QUESTION:
May the Lake County Board of County Commissioners loan money to a tax supported fire district in Lake County?
SUMMARY:
Unless and until judicially determined otherwise, a board of county commissioners is not authorized by law to loan county funds to a separate and distinct special tax district established and located within the county to be expended for the purposes of the district.
In a supplemental letter to this office, you state that the fire districts in question were established by the county by ordinance pursuant to the provisions of s. 125.01(5), F.S., which provides in pertinent part that the governing body of a county has the power `to establish . . . special districts for any part or all of the county . . . within which may be provided municipal services and facilities . . . .' These districts are separate and distinct from the county, operating from funds derived from service charges, special assessments, or taxes levied within the district only. See s. 125.01(5)(a), F.S. See also s. 125.01(5)(c), F.S., which authorizes the districts to levy taxes within the district `of any millage designated in the ordinance creating such a special district or amendment thereto and approved by vote of the electors . . . .' You therefore inquire as to whether the Lake County Board of County Commissioners can loan county funds to these fire districts situated in Lake County to be expended for the purposes of such districts.
The powers and duties of the legislative and governing body of a county are generally set forth in s. 125.01, F.S. And see s. 5(c), Art. II, State Const., providing that the duties and powers of `county officers shall be fixed by law.' Section 125.01(1)(r), R.S., specifically provides that a county may `borrow and expend money' for county purposes. It does not, however, provide for, or generally authorize, the loan of county funds, nor can this office conclude that such an expenditure of county funds may be implied therefrom. An express power duly conferred may include the implied authority to use means necessary to make the express power effective; but such implied authority may not warrant the exercise of a substantive power not conferred, such as, in this instance, the expenditure or loan of county funds to these separate and distinct taxing districts. See, e.g., Molwin Inv. Co. v. Turner,167 So. 33 (Fla. 1936); Gessner v. Del-Air Corp., 17 So.2d 522
(Fla. 1944); cf. Thayer v. State, 335 So.2d 815, 817 (Fla. 1976) (where a statute enumerates the things on which it is to operate, it is ordinarily to be construed as excluding from its operation all things not expressly mentioned); Dobbs v. Sea Isle Hotel,56 So.2d 341 (Fla. 1952); Ideal Farms Drainage District v. Certain Lands, 19 So.2d 234 (Fla. 1944). For a county to properly budget for the expenditure of public funds (see ch. 129, F.S.), there must be some constitutional or statutory authorization; in the absence of such authorization, an expenditure cannot be made. See
AGO 079-84 in which this office stated that a county was not authorized by law to loan county funds to a medical student as an incentive to practice medicine in the county after receiving his medical degree. Cf. 20 C.J.S. Counties s. 237 (when authorized to do so by statute, a county acting through its proper officers may make loans of surplus funds). And see AGO 077-38 in which this office concluded that noncharter counties were not authorized by general law to lend county funds derived from ad valorem taxes or from other sources to district school boards; therefore the county could not lend county funds for such purpose. The only loan or investment of county funds authorized by ch. 125 is the loan or investment of surplus funds provided for in s. 125.31, F.S., which authorizes the investment of county surplus funds in certain enumerated instruments and institutions. See also part IV of ch. 218, F.S. No other investments or loans of county funds are authorized by ch. 125, F.S., nor does that chapter specifically authorize a noncharter county to give or lend county funds to such special fire districts nor am I aware of any other provision of general law which authorizes a county to appropriate or expend county funds for such a purpose.
It has been suggested, however, in the supplemental materials supplied to this office that the requisite `lending power' which the county seeks to use may be found in the general provisions of s. 125.01(1)(w), F.S., which states that a county shall have the power to:
 Perform any other acts not inconsistent with law which are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law. (Emphasis supplied.)
This office cannot say that foregoing provision enlarges those powers specifically granted by subsection (r) of s. 125.01(1), F.S., or otherwise authorizes the county to lend county funds to a separate and distinct taxing authority; rather this office in AGO 077-38 stated that the principle of ejusdem generis, which limits general words or phrases following an enumeration of specific things to things of the same class or genus as those comprehended by the preceding specific terms, should be applied to the provisions of s. 125.01(1)(w). Therefore, only those activities in the nature of those described elsewhere in s. 125.01(1) would be deemed to be authorized. Cf. s. 5(c), Art. II, State Const., which requires the powers and duties of county officers to be `fixed by law.' Moreover, county funds may only be expended for a county purpose, and the tax revenues of the county may not be expended for the purposes of another governmental unit. See Town of Palm Beach v. City of West Palm Beach, 55 So.2d 566 (Fla. 1951); City of Lynn Haven v. Bay County, 47 So.2d 894 (Fla. 1950); Prescott v. Board of Public Instruction of Hardee County, 32 So.2d 731 (Fla. 1947); cf. Amos v. Mathews, 126 So. 308 (Fla. 1930). And see
Okaloosa County Water and Sewer District v. Hilburn, 160 So.2d 43
(Fla. 1964), in which the court stated that it had many times held that taxes raised for the purpose of one governmental unit may not be employed to accomplish the performance of the functions of another level of government. Cf. Dickinson v. Stone, 251 So.2d 268
(Fla. 1971) (unless otherwise expressly provided by law, appropriated money must be expended only for the purpose for which it was appropriated); Taylor v. Williams, 196 So. 214 (Fla. 1940); Supreme Forest Woodmen Circle v. Hobe Sound Co., 189 So. 249 (Fla. 1939) (funds raised by taxation for one purpose cannot be diverted to another without legislative authority and it is a violation of official duty in handling public funds for those charged by law with the lawful payment thereof to divert the funds to a purpose contrary to that for which they were raised). The foregoing cases support the proposition that the lending of county funds to a special tax district, separate and distinct from the county, to be expended for the purposes of the district, is not a valid `county purpose' for which county funds may be expended. My examination of the other statutory provisions which generally authorize county spending and contracting activity do not appear to abrogate the well established case law rule limiting county expenditures to county purposes. See, e.g., ss. 125.01(1)(p) (counties may enter into agreements with other governmental agencies for the performance of authorized functions); 125.01(1)(r) (counties may borrow and expend money); 125.01(3) (counties may expend funds, enter into contracts and carry out all implied powers necessary or incident to the enumerated powers; and 163.01, F.S. (local governmental units may enter into interlocal agreements). In fact, as previously noted, the use of county tax revenues for `county purposes' is still required under the terms of s. 125.01(1)(r).See also s. 9, Art. VII, State Const.
Prepared by: William D. Hall, Jr., Assistant Attorney General