The Honorable Charlie Green Lee County Clerk of Circuit Court Post Office Box 2469 Fort Myers, Florida 33902-2469
Dear Mr. Green:
As Clerk of the Circuit Court you are conducting an audit for the Board of County Commissioners of Lee County of the funds paid to the District 21 Medical Examiner's Office. In this regard you have asked for my opinion on substantially the following questions:
1. Is a district medical examiner a county or state officer for purposes of Chapters 116, 219, and 145, Florida Statutes, and Part III, Chapter 218, Florida Statutes, concerning a state or county officer's duties and obligations to account for income and revenues of that office?
2. Are the fees received by the Medical Examiner's Office for services relating to that office personal income of the chief medical examiner?
3. Are the expert witness fees authorized by section 406.09, Florida Statutes, which are received by the chief medical examiner or associate medical examiners, personal income or public funds?
4. May the medical examiner's office charge a fee in excess of the costs authorized by section 119.07(1), Florida Statutes, for autopsy photographs?
5. Is a district medical examiner's office authorized to charge the public a cremation authorization fee?
6. Is a county legally authorized to fund with county funds a privately-held 401(k) pension plan for the chief medical examiner, associate medical examiners, and employees; or should the chief medical examiner, associate medical examiners, and employees be part of the Florida Retirement System under Chapter 122, Florida Statutes, for such purposes?
7. Must all income and revenues received by the chief medical examiner from the counties and other revenue sources be deposited in a public depository under Chapter 136, Florida Statutes; or may such funds, in whole or in part, be deposited in privately owned accounts, such as the chief medical examiner's professional association accounts?
8. Must associate medical examiners file financial disclosure statements pursuant to section 112.3145, Florida Statutes?
9. Is the medical examiner required to have an annual financial audit as described in section 11.45, Florida Statutes?
According to information you have submitted to this office and information provided by the District 21 Medical Examiner's Office, an audit of the medical examiner's office is currently underway. A number of questions have arisen concerning the nature of the medical examiner's office and the methods of accounting for funds of the office.
The District 21 Medical Examiner's Office covers Lee, Hendry and Glades counties. The physical facilities and the equipment for that office are located in and owned by Lee County. The medical examiner's office submits an annual budget to the county. The budget consists of anticipated operational expenses and professional fees of the medical examiner's office. The only fees specified in the budget are fees for autopsies, narratives and declined jurisdiction. An interlocal agreement entered into between the medical examiner's office and the counties in the district specify percentages of payment for budgeted operational expenses of the office. Each county directly compensates the medical examiner for the professional fees, toxicology and transportation costs attributable to that particular county.
The current chief medical examiner for District 21 was appointed by the Governor in 2001. No written contract was suggested or offered to her by Lee County. She operates the medical examiner's office as a professional association, as did her predecessors. The current chief medical examiner does not engage in a separate private medical practice at the medical examiner's office.
A number of the questions presented in your request require some determination or characterization of the working arrangement between the medical examiner and the county. It is clear from the information submitted both by you and by the medical examiner that no written contract or agreement exists defining the working roles and responsibilities of each party, nor has that office ever operated under such an agreement. This office has no ability to characterize the arrangement between these parties in the absence of any written contract or other document providing the terms under which the medical examiner's office operates. It is my understanding that the county and the medical examiner are currently negotiating a contract establishing the terms under which the District 21 Medical Examiner's Office and Lee County will operate in the future.
Question One
Chapter 406, Florida Statutes, is the "Medical Examiners Act."[1] The act authorizes the creation of medical examiner districts throughout the state based on enumerated factors:
"[P]opulation, judicial circuits of the state, geographical size of the area of coverage, availability of trained personnel, death rate by both natural and unnatural causes, and similar related factors. No county may be divided in the creation of a district. However, this limitation shall not prohibit cooperative arrangements among the several districts."[2]
District medical examiners are appointed by the Governor for a three-year term of office.[3] The grounds for discipline for a medical examiner are set forth in section 406.075, Florida Statutes, and the Medical Examiners Commission is the entity responsible for reprimanding, placing on probation, removing, or suspending any medical examiner.
Medical examiner districts are distinct and independent statutory entities created for restricted purposes; they are not state agencies, as their prescribed powers are definitely confined to a less than statewide area.[4] Similarly, while there appear to be several medical examiner districts that encompass only one county,[5] the districts' mandates may reach across county lines.[6] Officers of a special district "are neither state nor county officers."[7] Thus, it is my opinion that a district medical examiner is a district officer rather than a state or county officer.
More particularly, Chapter 116, Florida Statutes, requires generally that state and county officers who collect funds that are due to the state or county must pay those moneys into the state or county treasury. This chapter also makes provision for reports to be made to the Department of Banking and Finance (now the Department of Financial Services) of fees and commissions of county or state fee officers.[8] This chapter does not apply to district medical examiners. Similarly, Chapter 145, Florida Statutes, which sets the compensation of county officials such as the clerk of circuit court,[9] the sheriff,[10] and the supervisor of elections,[11] does not prescribe the compensation of a district medical examiner.
Chapter 219, Florida Statutes, relates to the handling of county public money by state and county officers. The term "officer" for purposes of Chapter 219 is defined to mean "a county officer, including an officer whose authority is ordinarily confined to a district within a county, whose duties require or authorize him or her to collect public money[.]" As discussed above, a district medical examiner is not a county officer nor is his or her authority confined to "a district within a county." Thus, the provisions of this chapter do not apply.
Part III, Chapter 218, Florida Statutes, is the "Uniform Local Government Financial Management and Reporting Act."[12] For purposes of the act, a "local governmental entity" within the scope of these provisions includes a county agency, a municipality, or a special district as defined in section189.403, Florida Statutes. Section 189.403(1), Florida Statutes, defines "Special district" to mean
"a local unit of special purpose, as opposed to general-purpose, government within a limited boundary, created by general law, special act, local ordinance, or by rule of the Governor and Cabinet. The special purpose or purposes of special districts are implemented by specialized functions and related prescribed powers."
Among the legislative purposes for adoption of the act was to:
"(c) Improve communication and coordination between special districts and other local entities with respect to ad valorem taxation, non-ad valorem assessment collection, special district elections, and local government comprehensive planning.
(d) Move toward greater uniformity in special district elections and non-ad valorem assessment collection procedures at the local level without hampering the efficiency and effectiveness of the current procedures."[13]
While a medical examiner's district is in the nature of a special district because of its specialized function and geographical limitations, it is not a unit of government with the authority to impose taxes, nor is the medical examiner subject to election. Thus, it does not appear that a medical examiner district is subject to the management and reporting requirements of Part III, Chapter 218, Florida Statutes.
Question Two
I understand your second and third questions to be attempts to characterize the nature of fees coming into the Office of the District Medical Examiner.
Section 406.06(3), Florida Statutes, provides that:
"District medical examiners and associate medical examiners shall be entitled to compensation and such reasonable salary and fees as are established by the board of county commissioners in the respective districts."
Section 406.08, Florida Statutes, more clearly delineates who pays the medical examiner and what services are paid:
"(1) Fees, salaries, and expenses may be paid from the general funds or any other funds under the control of the board of county commissioners. The district medical examiner shall submit an annual budget to the board of county commissioners. (2) In the event that an examination or autopsy is performed by the district medical examiner or his or her associate upon a body when the death occurred outside the district, the governmental body requesting the examination or autopsy shall pay the fee for such services. (3) When a body is transported to the district medical examiner or his or her associate, transportation costs, if any, shall be borne by the county in which the death occurred. Nothing within this chapter shall preclude payment for services to the district medical examiner by the state, either in part or on a matching basis. (4) Notwithstanding any provision of law to the contrary, if an examination, investigation, or autopsy is performed by the district medical examiner or his or her associate upon the body of a person who died while in the custody of a facility or institution operated by a state agency, that state agency shall pay for such services and for any costs of transporting the body to the district medical examiner. (5) Autopsy and laboratory facilities utilized by the district medical examiner or his or her associates may be provided on a permanent or contractual basis by the counties within the district."
Clearly, the medical examiner may be receiving income from a number of sources: the county, other counties in the medical examiner district, the state, or another governmental body. These funds are public funds and the governmental entities paying these funds are responsible for making sure they are utilized for the purposes for which they were appropriated and paid.
In the case of the county, the medical examiner submits his or her annual budget and the county appropriates and pays funds to meet the budget requests of the medical examiner. It is the responsibility of the county to ensure that county funds are used to meet county purposes. Thus, the county must satisfy itself that the medical examiner is using those funds paid by the county to do the county's business. Whether this accountability takes the form of a private audit requirement in the medical examiner's contract or some other means of accounting for these expenditures of county funds is a determination that must be made by the county commission.[14]
Question Three
Section 406.09, Florida Statutes, provides that "[d]istrict medical examiners or associate medical examiners shall be entitled to expert witness fees as provided by law." Expert witness fees may be paid to the medical examiner or his or her associates under a number of statutory provisions. For example, section 905.185, Florida Statutes, provides that, when requested by the grand jury, the state attorney shall issue process to secure the attendance of witnesses.[15]
Section 92.231, Florida Statutes, which provides generally for "expert witness fees," states:
"(1) The term `expert witness' as used herein shall apply to any witness who offers himself or herself in the trial of any civil action as an expert witness or who is subpoenaed to testify in such capacity before a state attorney in the investigation of a criminal matter, or before a grand jury, and who is permitted by the court to qualify and testify as such, upon any matter pending before any court. (2) Any expert or skilled witness who shall have testified in any cause shall be allowed a witness fee including the cost of any exhibits used by such witness in the amount of $10 per hour or such amount as the trial judge may deem reasonable, and the same shall be taxed as costs."
These fees are payable by the party to the civil action who calls the expert witness and are ultimately taxed as costs by the court in favor of the prevailing party and against the losing party.
Section 90.702, Florida Statutes, provides:
"If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial."
Section 914.06, Florida Statutes, allows for the compensation of expert witnesses in criminal cases:
"In a criminal case when the state or an indigent defendant requires the services of an expert witness whose opinion is relevant to the issues of the case, the court shall award reasonable compensation to the expert witness that shall be taxed and paid by the county as costs in the same manner as other costs."
Finally, section 936.003(2), Florida Statutes, provides for the calling and examination of witnesses at an inquest.[16] The statute states:
"Upon receipt of the petition of the state attorney, the county court judge shall schedule the time and place of the inquest. The county court judge shall send her or his warrant for witnesses, to be served by a sheriff, commanding the witnesses to come to the inquest to be examined and to declare their knowledge concerning the death. Any witness appearing at, or summoned to appear at, an inquest shall be entitled to the same compensation as that provided by law for witnesses in any criminal proceeding held in the county."
The statutes make provision for expert witness fees to be paid to the district medical examiner in a number of situations involving civil and criminal proceedings. These fees may be paid by the state, the county, or a private party, but are all income to the Office of the District Medical Examiner when the medical examiner is testifying in that capacity. In the case of public moneys from the state attorney or county, the public agency paying the fees must satisfy itself that the moneys are being paid for an appropriate purpose. The medical examiner is charged with ensuring that funds paid into the medical examiner's office are used for the purposes of that office.
Question Four
You ask whether a fee may be charged by the medical examiner's office for autopsy photographs in excess of the costs authorized by the Public Records Law.
The Public Records Law requires that "[e]very person who has custody of a public record shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or the custodian's designee."[17] Accompanying this right of inspection is the right to copy public records:
"The custodian shall furnish a copy or a certified copy of the record upon payment of the fee prescribed by law or, if a fee is not prescribed by law, for duplicated copies of not more than 14 inches by 8 ½ inches, upon payment of not more than 15 cents per one-sided copy, and for all other copies, upon payment of the actual cost of duplication of the record."
A "public record," for purposes of the law, includes "photographs."[18] I would note that the Public Records Law recognizes that, under certain circumstances, additional fees may be charged for the copying of public records:
"If the nature or volume of public records requested to be inspected, examined, or copied pursuant to this subsection is such as to require extensive use of information technology resources or extensive clerical or supervisory assistance by personnel of the agency involved, or both, the agency may charge, in addition to the actual cost of duplication, a special service charge, which shall be reasonable and shall be based on the cost incurred for such extensive use of information technology resources or the labor cost of the personnel providing the service that is actually incurred by the agency or attributable to the agency for the clerical and supervisory assistance required, or both. `Information technology resources' means data processing hardware and software and services, communications, supplies, personnel, facility resources, maintenance, and training."[19]
The inspection and copying of autopsy photographs or video or audio recordings of autopsy proceedings are treated distinctly in section 406.135(1), Florida Statutes:
"A photograph or video or audio recording of an autopsy in the custody of a medical examiner is confidential and exempt from the requirements of s. 119.07(1) and s. 24(a), Art. I of the State Constitution, except that a surviving spouse may view and copy a photograph or video or listen to or copy an audio recording of the deceased spouse's autopsy. If there is no surviving spouse, then the surviving parents shall have access to such records. If there is no surviving spouse or parent, then an adult child shall have access to such records. However, the deceased's surviving relative, with whom authority rests to obtain such records, may designate in writing an agent to obtain such records. A local governmental entity, or a state or federal agency, in furtherance of its official duties, pursuant to a written request, may view or copy a photograph or video or may listen to or copy an audio recording of an autopsy, and unless otherwise required in the performance of their duties, the identity of the deceased shall remain confidential and exempt. The custodian of the record, or his or her designee, may not permit any other person, except an agent designated in writing by the deceased's surviving relative with whom authority rests to obtain such records, to view or copy such photograph or video recording or listen to or copy an audio recording without a court order. For the purposes of this section, the term `medical examiner' means any district medical examiner, associate medical examiner, or substitute medical examiner acting pursuant to this chapter, as well as any employee, deputy, or agent of a medical examiner or any other person who may obtain possession of a photograph or audio or video recording of an autopsy in the course of assisting a medical examiner in the performance of his or her official duties."
Thus, while autopsy reports and records are within the scope of public records for purposes of Chapter 119, Florida Statutes,[20] photographs and video and audio recordings of autopsy proceedings are specifically made confidential and exempt from inspection and copying by the general public by section406.135, Florida Statutes.[21]
However, to the extent that persons or agencies who are authorized by section 406.135(1), Florida Statutes, to receive copies of these records request a copy, the copies should be provided in conformance with the provisions of the Public Records Law. That is, copies of autopsy photographs should be provided at the cost authorized in section 119.07(1)(a), Florida Statutes, whether that is the "actual cost of duplication" or, under appropriate circumstances, the special service charge for the use of information technology resources.
Question Five
You ask whether the medical examiner's office is authorized to charge the public a cremation authorization fee.
Medical examiners, like other public officers, have no legal claim for official services rendered, except when, and to the extent that, compensation is provided by law, and when no compensation is so provided rendition of such services is deemed to be gratuitous.[22] I am aware of no authority in Chapter 406, or elsewhere in the statutes, for the medical examiner to charge a cremation authorization fee. In the absence of any such statutory authorization, it is my opinion that this service is to be provided without charge to the public as a service of the office.
Question Six
Resolution of this question requires consideration of the employment status of the medical examiner and his or her staff. In the absence of any agreement establishing the employment arrangement between the medical examiner and the county, this office has no basis for such a determination.
With regard to coverage of particular employees of the medical examiner's office under the provisions of Chapter 122, Florida Statutes, the Florida Retirement System, this question is most appropriately addressed to the Division of Retirement, Florida Department of Management Services.
Question Seven
Section 136.01, Florida Statutes, provides:
"Each county depository shall be a qualified public depository as defined in s. 280.02 for the following funds: county funds; funds of all county officers, including constitutional officers; funds of the school board; and funds of the community college district board of trustees. This enumeration of funds is made not by way of limitation, but of illustration; and it is the intent hereof that all funds of the county, the board of county commissioners or the several county officers, the school board, or the community college district board of trustees be included."
Accounts in county depositories are subject at all times to the inspection and examination by the county auditor and by the Auditor General.[23]
As discussed in Question One, the Office of Medical Examiner is in the nature of a district office, not a county office. I am aware of no provision of Chapter 136, Florida Statutes, that requires the medical examiner to pay all funds received by him or her from a county into a county depository. While the county may wish in future employment contracts with the Office of Medical Examiner to make provision for accountability for funds paid to that office, I cannot say that any requirement exists that the medical examiner deposit funds paid to that office into a county depository.[24]
Question Eight
Any question of the applicability of the Code of Ethics for Public Officers and Employees, Part III, Chapter 112, Florida Statutes, to the employees of the Office of Medical Examiner is most appropriately addressed to the Commission on Ethics, which interprets the code.[25] This office has no authority to construe the provisions of the Code of Ethics or their applicability to particular officers or employees.
Question Nine
Section 11.45, Florida Statutes, provides authority for the Auditor General to perform certain audits. Questions of the scope of the Auditor General's authority should be addressed to that office for resolution.
Sincerely,
Charlie Crist Attorney General
[1] See s. 406.01, Fla. Stat., providing the title for the act.
[2] Section 406.05, Fla. Stat.
[3] Section 406.06(1)(a), Fla. Stat.
[4] See Op Att'y Gen. Fla 87-09 1987 (medical examiner not a "state agency" for purposes of representation by Attorney General in civil action arising from alleged acts or omissions within scope of district medical examiner's official duties). Cf., Bairv. Central and Southern Florida Flood Control District,144 So.2d 818, 820 (Fla. 1962).
[5] See Rule 11G-5.002, F.A.C.
[6] See s. 406.05, Fla. Stat., recognizing cooperative arrangements among the several medical examiner districts.
[7] Town of Palm Beach v. City of West Palm Beach,55 So.2d 566, 569 (Fla. 1951). For another example of district officers within the Florida Statutes, see s. 373.073, Fla. Stat., et. seq., providing for the governing board of water management districts and their powers and duties.
[8] Section 116.03, Fla. Stat.
[9] Section 145.051, Fla. Stat.
[10] Section 145.071, Fla. Stat.
[11] Section 145.09, Fla. Stat.
[12] Section 218.30, Fla. Stat.
[13] Section 189.402(2), Fla. Stat.
[14] Cf., s. 406.075(1)(b), Fla. Stat., making the medical examiner subject to reprimand, probation or removal or suspension for "misuse or misappropriation of public funds or property."
[15] See also State v. Mitchell, 188 So.2d 684, 687-688 (Fla. 4th DCA 1966), cert. discharged, sub. nom., 192 So.2d 281 (Fla. 1966), as to the common law rule and the implied constitutional and statutory authority and duty of the courts and the state attorney with respect to the issuance and service of witness subpoenas to secure witnesses to testify before the grand jury. The statutory scheme for obtaining state funds for paying witnesses appearing before the grand jury and the manner of payment of such witnesses is set forth in sections 40.29-40.35, Florida Statutes.
[16] For purposes of Chapter 936, Florida Statutes, an "inquest" is defined to mean
"a formal, nonadversary, nonjury presentation of evidence concerning a death, discovered by the medical examiner, state attorney, and law enforcement agency during their respective examinations and investigations into the death."
[17] Section 119.07(1)(a), Fla. Stat.
[18] See s. 119.011(1), Fla. Stat.
[19] Section 119.07(1)(b), Fla. Stat.
[20] See Op. Att'y Gen. Fla. 78-23 (1978) (autopsy reports made pursuant to law are public records which must be made available for public inspection and examination unless exempted by special act. If not exempted from disclosure by special act, an autopsy report may be kept confidential only to the extent necessary to ensure that a criminal investigation would not be significantly impeded and enable violators of the criminal laws to escape detection and apprehension. Documents or records made confidential by statute do not lose such status upon receipt by the medical examiner.)
[21] See Ops. Att'y Gen. Fla. 03-25 (2003) and 01-47 (2001) discussing the scope of this exemption to the Public Records Law for autopsy records.
[22] See, e.g., Gavagan v. Marshall, 33 So.2d 862 (Fla. 1948);Rawls v. State, 122 So. 222 (Fla. 1929).
[23] Section 136.08, Fla. Stat.
[24] Cf., Ops. Att'y Gen. Fla. 72-272 (1972) (funds of governmental entities separate and apart from the county do not come within the purview of Chapter 136, Florida Statutes.); 60-77 (1960).
[25] Section 112.322(3)(a), Fla. Stat.